RUTH E. MADDEN, executrix, & another *vs.* CHARLES J. MADDEN & others.

Middlesex.   November 9, 1931. — June 27, 1932.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Probate Court*, Proceedings in equity, Parties, Appeal.  *Res Judicata.*
 *Guardian*, Of insane person.  *Insane Person.   Attorney General.*
 *Words*, "Aggrieved."

A will established a trust to provide for the support of the testator's son
 during his life.   The son subsequently was committed to a State hospi-
 tal as an insane person, and the Commonwealth presented to his guard-
 ian a bill for his support therein.   The guardian having requested the
 trustee under the will to pay him a sum for use in paying the bill and
 also certain expenses of the guardian, the trustee brought a petition for
 instructions in a probate court naming as respondents the guardian,
 the insane son and the remaindermen under the will, as "all the
 parties interested."   Notice was given to such persons, but was not
 published.   A decree was entered to the effect that the trustee should
 not make the payment requested by the guardian.   The Attorney
 General, "appearing for the department of mental diseases," filed an
 appeal.   *Held*, that
  (1) The proceeding was *res inter alios* so far as the Commonwealth,
 as a creditor of the son, was concerned;
  (2) No personal right and no public or official duty of the Attorney
 General or of the department of mental diseases was affected by the
 decree;
  (3) The appellant was not a "person aggrieved" within the meaning
 of G. L. c. 215, § 9, and he could not maintain the appeal.
It was not necessary to determine whether the fact, that the appeal above
 described was by the Attorney General "appearing for the department
 of mental diseases" rather than by him in the name of the State treas-
 urer, would have been fatal to the maintenance of the appeal if there
 had been no other objection thereto.
A further appeal from the decree above described by the guardian of the
 insane son was treated by this court as an appeal by the guardian in his
 own behalf and not in behalf of his ward; and, the guardian not having
 presented an oral argument or a brief in support of his appeal, it was
 *held* to have been waived.

PETITION for instructions, filed in the Probate Court for
the county of Middlesex on August 20, 1930, and afterwards
amended, described in the opinion.

A decree entered by order of *Harris*, J., and appeals therefrom are described in the opinion.

*E. T. Simoneau*, Assistant Attorney General, for the department of mental diseases of the Commonwealth.

*P. F. Shaughnessy*, for the petitioner.

FIELD, J.   Bridget T. Madden died November 23, 1926, leaving a will which provided as follows: "I give, devise and bequeath all of my real and personal property, consisting principally of the farm where I live and the house and barn and other buildings thereon and the furniture and fixtures and the cattle and other presonal [*sic*] property thereon, to my daughter, Ruth E. Madden, in trust, nevertheless, for her support and for the support and maintenance of my son, Charles J. Madden, during his natural life, and I direct my said daughter, Ruth E. Madden, to take possession of all of my said property at my death and carry on the farm as I have been doing with the assistance of my said son, Charles J. Madden, and to use the income thereof for his and her support during his lifetime, and to pay the taxes, insurance and the interest on the mortgage on my said property and to do all the other things necessary to carry on said farm, so that my said son, Charles J. Madden, will have his maintenance and support out of the proceeds of said farm during his natural life, and if my said daughter, Ruth E. Madden, finds she is unable to carry on my said farm at a profit so as to support herself and said Charles J. Madden, from the income thereof, then I authorize and direct my said daughter, Ruth E. Madden, to sell my said property, both real and personal . . . and to invest the proceeds thereof and use the income thereof, and so much of the principal as is necessary for the support and maintenance of my said son, Charles J. Madden, during his life, and at his death this trust is to terminate, and what remains of my property at the death of my said son, I give, devise and bequeath in four equal shares to my three children, William F. Madden, Sarah A. Casey, and Ruth E. Madden, and to John F. Good, who lived with me from the time he was two years old until he married. . . . I purposely give and bequeath

to my children, as herein provided, and I provide especially herein for my son, Charles J. Madden, because he is unable to provide for himself."

This is a petition in equity brought in the Probate Court by Ruth E. Madden, executrix and trustee under the will of Bridget T. Madden, against Charles J. Madden, Sarah A. Carver, formerly Sarah A. Casey, John F. Good, William F. Madden and John W. Brennan, "guardian of said Charles J. Madden who is an insane person," alleging them "to be all the parties interested in the matter of said petition," wherein the petitioner alleges the allowance of the will of the testatrix, and alleges further that "On January 19, 1927, while . . . [the petitioner] was in possession of said farm and carrying it on with said Charles J. Madden, said Charles J. Madden was arrested . . . for assault . . . and . . . the court ordered that he be examined . . . as to his sanity, as provided by law, and after he was examined, he was committed on January 20, 1927, to the Westborough State Hospital, as an insane person, and he has remained there ever since, he being now thirty-eight years old, and after his arrest and commitment . . . [the] petitioner found that she was unable to carry on said farm, as authorized by the terms of said will and she sold said farm . . . and invested the proceeds thereof, less the expenses of the sale and probate of the will and her support and the support of said Charles J. Madden and other expenses, as stated in her account as executrix, . . . leaving a balance of $5,457.53 . . . in her hands when she was appointed trustee under said will July 30, 1930; and John W. Brennan was appointed guardian of said Charles J. Madden June 9, 1930, and the Commonwealth of Massachusetts has presented a bill to said guardian for the support of said Charles J. Madden at said State Hospital from January 20, 1927, to July 1, 1930, amounting to $1,258, and said guardian has requested the said trustee, Ruth E. Madden, to pay said $1,258 to him for the Commonwealth and also to pay $35 for the expenses of the petitioner allowed by the court for filing the petition for the appointment of said guardian and $24 for the surety on the bond

of said guardian and for the other expenses of said guardian since his appointment." The petitioner prays "that she be instructed . . . as to whether she must pay under the trust created by said will said $1,258 to said guardian for said Commonwealth, and whether she must also pay the expenses of the appointment of said guardian as ordered by the court, and must pay said $24 for the surety on said guardian's bond and the other expenses of said guardian since his appointment, as aforesaid."

No answer was filed by Charles J. Madden or by the residuary legatees and devisees under the will.

John W. Brennan "as he is guardian of Charles J. Madden, an insane person," filed an answer admitting the truth of the allegations of the petition and alleging further that since his appointment "he has received no principal or income belonging to his said ward under the trust created by the will of his mother, the late Bridget T. Madden . . . and that no funds have been received by him for his said ward from any source," that "the department of mental diseases for the Commonwealth of Massachusetts" has presented to him "a bill for the care and maintenance of the said Charles J. Madden" from January 20, 1927, to July 1, 1930, amounting to $1,258, that said department has requested him to pay that amount and that he "desires to pay department . . . for the maintenance of said Charles J. Madden" for the period in question "if the same can legally be done, and if his care at said hospital is deemed to be maintenance as set forth under the terms of said will."

A decree was entered reciting that "notice has been given all parties interested," and that the petition has been "taken for confessed as against William F. Madden, Charles J. Madden and John W. Brennan, guardian of said Charles J. Madden for failure to answer and as against Sarah A. Carver and John F. Good for failure to appear and answer and said guardian later answered by leave of court," and decreeing "that it is not the duty of said petitioner to apply either the income or principal of the fund held in trust by her for the benefit of Charles J. Madden and others to the payment of said sum of $1,258 for his board at the West-

borough State Hospital, nor to the payment of the expense of procuring the appointment of a guardian for said Charles J. Madden, nor to the payment of the expense of procuring a surety on the bond of said guardian or other expenses."

Appeals from the decree were filed by the "Attorney General . . . appearing for the department of mental diseases," though neither the Attorney General nor the department of mental diseases was named as a party to the proceeding, and by John W. Brennan as "guardian of Charles J. Madden . . . an insane person."

1. The appeal by the "Attorney General . . . appearing for the department of mental diseases," cannot be maintained, since the appellant is not a "person aggrieved" by the decree within the meaning of G. L. c. 215, § 9.

The right sought to be protected by this appeal is the right conferred upon the Commonwealth by G. L. c. 123, § 96, as finally amended by St. 1926, c. 274, which provides in part that "The price for the support of inmates of State hospitals . . . shall be determined by the department at a sum not exceeding ten dollars per week for each person, and may be recovered of such persons . . . if of sufficient ability. . . . Such action shall be brought by the Attorney General in the name of the State treasurer." This section provides further that "In all proceedings under this section the sworn statement of a person that he is the superintendent of one of said institutions, or keeps or has custody of the records thereof or of the records of the department, and that a certain person has been an inmate of said institution during a certain period of time, or that the price of the support of a certain inmate has been determined at a certain sum by the department, shall be *prima facie* evidence of the said facts."

This statute imposes an obligation upon an inmate of a State hospital "if of sufficient ability" to pay for his support therein, and provides a method by which the price of such support may be recovered by the Commonwealth. The statute, however, does not purport to create any special method of procedure for collecting such claims, except as it designates the officer in whose name the "action" is to be

brought (compare G. L. c. 12, § 5), and makes certain statements *prima facie* evidence of facts essential to proof. Whatever further limitations upon the form of proceeding, if any, are implied by the use of the word "action" in the statute (compare *Boston* v. *Turner*, 201 Mass. 190, 196), it at least is clear that the statutory liability of the inmate is to be enforced in accordance with established principles governing the form of procedure adopted.

For a person to be "aggrieved" within the meaning of G. L. c. 215, § 9, by a decree of the Probate Court "it must appear that he has some pecuniary interest, some personal right, or some public or official duty resting upon him, affected by the decree." *Monroe* v. *Cooper*, 235 Mass. 33, 34, and cases cited.

Neither the Attorney General nor the department of mental diseases has any pecuniary interest affected by the decree except as they may represent a pecuniary interest of the Commonwealth. If any interest of the Commonwealth is affected by the decree it is a pecuniary interest, though created as an incident of the Commonwealth's wardship over insane persons.

The Commonwealth acquired no interest in the trust fund under the will or by assignment of any interest of a beneficiary of the trust. The appellant is seeking merely to enforce the Commonwealth's right to be paid for the support of the inmate at the State hospital against the interest of such inmate in the trust fund. Though this right differs in its origin — being statutory rather than contractual — from that of an ordinary unsecured creditor of the beneficiary, the Commonwealth's position in this proceeding is similar to that of such a creditor seeking to reach and apply his debtor's beneficial interest in a trust fund in payment of a debt for support furnished. The statute does not purport to impose a lien upon property of the inmate in favor of the Commonwealth. Nor does it purport to give any preference to the Commonwealth's claim (see *Commonwealth* v. *Commissioner of Banks*, 240 Mass. 244, 247–248; *Campbell* v. *Commissioner of Banks*, 241 Mass. 262), but, on the contrary, this claim is conditional upon the inmate's being "of suffi-

cient ability" to pay for his support and existing debts are considered in determining whether he is of such ability. *Templeton* v. *Stratton*, 128 Mass. 137, 139.

The right of the Commonwealth, in substance an unsecured creditor of the inmate, was not affected by the decree. On its probate side the Probate Court does not ordinarily take cognizance of assignments of interests of beneficiaries (*Gifford* v. *Smiley*, 271 Mass. 467, 472–473, *Buttrick* v. *Snow*, 277 Mass. 401, 404), nor, *a fortiori*, of unsecured debts of such beneficiaries. Compare *Smith* v. *Bradstreet*, 16 Pick. 264; *Leyland* v. *Leyland*, 186 Mass. 420; *Hayden* v. *Keown*, 232 Mass. 259, 261. The present proceeding, however, was brought on the equity side of the Probate Court and stands, so far as the limited jurisdiction of that court permits (see G. L. c. 215, § 6, as amended by St. 1929, c. 342, § 1), like bills in equity in courts having concurrent jurisdiction. *Bennett* v. *Kimball*, 175 Mass. 199. *Stowell* v. *Ranlett*, 238 Mass. 599, 602–603. Whether in such a proceeding, brought for the construction of a will, the rights of unsecured creditors of a beneficiary of a trust created by such will can be adjudicated — as the rights of assignees of such beneficiaries could be, see *Montague* v. *Silsbee*, 218 Mass. 107; *Stowell* v. *Ranlett*, 238 Mass. 599, 602–603, — need not be decided, for the Commonwealth was not a party to this proceeding and its rights were not foreclosed by the decree therein. This decree, as to the Commonwealth, was *res inter alios*. *Lewis* v. *Bolitho*, 6 Gray, 137, 139. *Forbes* v. *Douglass*, 175 Mass. 191. *Security Bank of New York* v. *Callahan*, 220 Mass. 84, 89, and cases cited. We need not consider whether the Commonwealth could have been made a party to the proceeding. G. L. c. 258, § 1. *Hodgdon* v. *Haverhill*, 193 Mass. 406, 407–408. Nor need we consider whether the proceeding so resembles an action *in rem* (see *Minot* v. *Purrington*, 190 Mass. 336, 340), that the decree would have bound the Commonwealth if there had been a general publication of notice to all persons interested not specifically named as parties, for there was no such publication.

No personal right and no public or official duty of the

Attorney General or of the department of mental diseases was affected by the decree. No such specific statutory duty is imposed on this department as was imposed upon it by the statute considered in *Kline* v. *Shapley*, 232 Mass. 500. See also *Keating* v. *Director of the United States Veterans' Bureau*, 272 Mass. 212. The rights of the Attorney General and of the department of mental diseases rise no higher than those of the Commonwealth which they seek to vindicate in this proceeding.

It is not necessary to determine whether the fact that the appeal was taken by the "Attorney General . . . appearing for the department of mental diseases" rather than "by the Attorney General in the name of the State treasurer," would be fatal if there was no other objection to the maintenance of the appeal. See G. L. c. 123, § 96, as amended. Compare *Boston & Albany Railroad* v. *Commonwealth*, 157 Mass. 68, 70.

2. We treat the appeal of the guardian as waived since he has presented no argument orally or by brief in support of it. *National Fire Ins. Co.* v. *Goggin*, 267 Mass. 430, 432. This appeal is in the name of the guardian. In the light of the record it must be interpreted as an appeal in his own behalf and not as an appeal by his ward, who was the owner of the present beneficial interest in the trust fund and a necessary party to a suit affecting that interest. *Lombard* v. *Morse*, 155 Mass. 136, 137. *Taylor* v. *Lovering*, 171 Mass. 303. *Murphy* v. *Duane*, 238 Mass. 483, 486. Consequently the principle that a person under the protection of the court because insane should not be defaulted does not apply to this appeal. See *Taylor* v. *Lovering*, 171 Mass. 303, 306. See also *Cogan* v. *Cogan*, 202 Mass. 58.

Even if we should assume that the appeal, contrary to the interpretation we have given it, is an appeal by the ward it should be dismissed for want of prosecution. It is somewhat difficult to see how the ward was, in any real sense, aggrieved by the decree appealed from, though, since it did not bind the Commonwealth it may furnish him little or no protection. And even if the ward was

technically aggrieved by the decree the guardian could reasonably have considered that it was so favorable to the ward that prosecution of an appeal therefrom was contrary to the ward's interests. But we cannot assume, for the purpose of reviewing a decree in favor of the ward, that the appeal was taken in his behalf. If, however, as does not appear, there was accident or mistake in not appealing in behalf of the ward, leave for late entry of an appeal in his behalf could be granted on a seasonable petition to this court therefor, under G. L. c. 215, § 15. *Martell* v. *Moffatt,* 276 Mass. 174, 178–179. *Charbonneau* v. *Guillet,* 278 Mass. 153. We need not consider whether the decree, by reason of the improper order taking the petition as confessed against the ward (*Taylor* v. *Lovering,* 171 Mass. 303, 306), and the other circumstances of the case, failed to bind him, or whether, if it bound him, it could be reviewed upon a petition for a bill of review. *Boston & Maine Railroad* v. *Greenfield,* 253 Mass. 391, 397.

It follows that the appeals must be dismissed. *Donovan* v. *Donovan,* 223 Mass. 6.

*Ordered accordingly.*