DOROTHY L. BUTLER & others *vs.* HALEY GREYSTONE
CORPORATION & others.

Essex.    February 5, 1964. — May 12, 1964.

Present: SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Real Property,* Registered land: easement, decree of registration, cer-
tificate of title. *Easement.*

In a suit in the Land Court by owners of lots in a seashore tract against
owners of certain lots in a nearby, inland tract and a corporation which
was the owner of the rest of the inland tract and the owner of a beach
area included in the seashore tract, the evidence and findings, showing
former common ownership of both tracts, the course of development of
the seashore tract, and the terms of a decree registering title to the
beach area in the former common owner and the terms of the defendant
corporation's certificate of title thereto, did not establish as of record
rights in the beach area so limited to the exclusive benefit of owners of
lots in the seashore tract as to support a decree enjoining the corpora-
tion from granting rights to use the beach area to owners of lots in
the inland tract and from erecting on the beach area certain structures
as interfering with the plaintiffs' right to use it for recreation; such
decree was reversed and, in the absence of any findings whether the
corporation when it acquired the beach area, or the individual de-
fendants when, as alleged, they were granted rights in the beach area,
had actual knowledge of any prior rights of the character claimed by
the plaintiffs, the suit was remanded for further proceedings.

BILL IN EQUITY filed in the Superior Court on October 22,
1959, and subsequently transferred to the Land Court.

The suit was heard by *McPartlin,* J.

*Harold Katz (John H. Fletcher Calver* with him) for
Haley Greystone Corporation.

*Bernard N. Abrams (Daniel O. Mahoney* with him) for
Dorothy L. Butler & others.

*Colin W. Gillis* for Marvin A. Meyers & another (*Thomas
J. Bongiorno,* for Alan B. Wolf & others, with him).

SPIEGEL, J.    This is a bill of complaint brought to deter-
mine the rights of the plaintiffs and the defendants in a par-
cel of beach property in Marblehead.    The case was origi-

nally entered in the Superior Court and was subsequently transferred to the Land Court. A judge of that court entered a final decree from which the plaintiffs and the two corporate defendants appealed.[1] The evidence is reported and all of the exhibits are before us.

The judge made findings, which we herewith summarize. In 1925, Sterling Realty Company (Sterling) took title by recorded deed to two tracts of land in Marblehead. "One parcel [Section No. 1] was a tract of seashore land situated on the southeasterly side of Atlantic Avenue together 'with all rocks, beaches, and flats thereto belonging.' The other parcel [Section No. 2] was situated on the northwesterly side of Atlantic Avenue opposite the first parcel." Sterling subdivided Section No. 1 into house lots, roads, ways, and a beach reservation. A plan of the subdivision that included the location of the beach area known as Sandy Beach Reservation was filed with the registry of deeds in 1926; other subdivision plans were filed at later dates.

Section No. 1 "was developed by laying out the lots, building roads and ways and putting in utilities. Sterling . . . printed sales literature, and commenced to sell the lots." Louis Gutterman (Gutterman), Sterling's principal stockholder, was active "in promoting the development and sale of the lots from 1926 until his death in 1954. He talked with the prospective buyers, showed them the lots, discussed the prices of the lots, the conditions and restrictions which were to be imposed on the lots for the benefit of the development and took part in the preparation of sales agreements and the deeds." He informed prospective purchasers that "he would permit only those persons owning property in Section No. 1 or guests of such owners to use . . . [Sandy Beach Reservation]." In 1926, a lot in Section No. 1 was conveyed by deed to one Hannah Sweet. Title to the lot was conveyed "together with the right to use 'Sandy Beach Reservation,' . . . for recreation in common with the grantor,

[1] An appeal from the final decree was filed by the defendant Eli Lehman Builders, Inc., but since no brief has been presented on its behalf, we treat its appeal as waived. *Madden* v. *Madden*, 279 Mass. 417, 424. *Division of Unemployment Compensation* v. *Bowles*, 318 Mass. 782, 783.

its successors, grantees and assigns, and subject to such rules and regulations as the grantor may establish or adopt.'' The conveyance was made subject to certain restrictions and conditions, to remain in force until January 1, 1956, one of which was that ''[n]o use shall be made of the 'Beach Reservation'. . . except for recreation.'' The grantor reserved the right ''to construct, lay and maintain in, through, over and upon . . . [Hannah Sweet's land] for the benefit of . . . [Section No. 2] sewers, water pipes and culverts and mains for conveying both fresh and salt or ocean water . . ..'' The deed to Hannah Sweet ''is incorporated by reference in the subsequent deeds of the remaining lots in Section No. 1.''

Although prior to Gutterman's death only one lot was sold out of Section No. 2, ''he described to interested persons the proposed development of that area. It was the intention of Sterling to drain this area and lay out lots and roads, and to build thereon a salt-water lagoon for swimming and bathing purposes, and to pipe salt water from the ocean to this lagoon. [As noted above, a]n easement for the laying of these pipes was put on Section No. 1.'' The one conveyance out of Section No. 2 during Gutterman's lifetime, in 1947, was made by a deed that stated in part: ''Said premises are conveyed with the provision, restriction or reservation that no right is conveyed, and the grantee and those claiming under him shall have no right to, in any way, use any portion of Sandy Beach Reservation located in Section No. 1 . . ..'' In June, 1955, Sterling conveyed by deeds to John H. Procter Sandy Beach Reservation and the remainder of Section No. 2 ''with all rights appurtenant thereto.'' Procter had been ''well acquainted'' with Gutterman and had also bought lots in Section No. 1,[2] some of which he held for resale purposes. After Procter took title to Section No. 2, ''he subdivided . . . [it] into lots some of which he sold. He granted in his deeds an appurtenant right to these lots to use the beach reservation. . . . Proc-

---

[2] Three lots in Section No. 1 were bought at the same time that the land in Section No. 2 was purchased.

ter, in 1959, conveyed all of Section No. 2 to which he then held title, together with the beach reservation to the defendant Haley Greystone Corporation [Haley] . . . . On July 9, 1959 the said Haley granted to one of the lots in Section No. 2 an appurtenant easement to use the beach reservation . . . . Haley advertised in newspapers that it had for sale lots with beach rights and that it proposed to erect a beach club on the beach reservation for the benefit of the buyers of the lots.''

While Gutterman was alive, Sterling strictly enforced compliance with the conditions on which lots in Section No. 1 had been conveyed. Policemen were hired ''to prevent the use of the beach by unauthorized persons. . . . In recent years the beach itself has been used on week days on the average by thirty people, and on week-ends on the average by forty people.'' It appears, nevertheless, that despite Gutterman's efforts at enforcement of beach rights, ''[o]ver the years . . . the beach . . . would be used intermittently by unauthorized persons without complaint by the lot owners in Section No. 1. . . . Shortly after the death of . . . Gutterman in 1954, the lot owners in Section No. 1 found it necessary to form a voluntary unincorporated association for the purpose of maintaining the beach reservation and in policing the area to keep unauthorized persons from using the beach. Dues were . . . [collected] which were used to pay the expenses of hiring a policeman and also for the cost of repairs and maintenance work on the beach reservation.'' Until 1959, lot owners in Section No. 2 were freely permitted to use the beach and some of them were members of the association. However, when apprised of the plan to build the beach club and of a proposal by Haley to sell 100 house lots in Section No. 2 and ''give to each lot an appurtenant right to use the beach reservation,'' several owners in Section No. 1 decided to bring the present suit. Dues to owners in Section No. 2 were returned.

Both Gutterman and Procter told prospective purchasers of lots in Section No. 1 that ''nothing was to be built on the reservation so that the water view from adjacent lots would

not be restricted or limited.'' In a 1930 agreement of sale covering a lot in Section No. 1, to which Sterling and one Joseph W. Worthen were parties, it was stated that ''no structures shall be erected . . . on the . . . beach reservation except seats, shelters or other similar structures.''

''Sterling registered its title to . . . 'Sandy Beach Reservation.' '' The decree of the Land Court is dated February 9, 1931, and contains the following language, ''The land hereby registered is subject to the restrictions, rights and easements heretobefore granted or imposed by deeds and which may hereafter be so granted or imposed by the petitioner [Sterling] and its successors in title . . . .'' ''An examination of the abstract and papers in Registration Case No. 14481 [the 1931 registration of Sandy Beach Reservation] discloses that in paragraph three of the petition, it was alleged that the land was affected by an encumbrance described as 'the right of the grantees of the petitioner's [Sterling's] other land to use the land described for recreation in common with the petitioner [Sterling], its successors, grantees and assigns, subject to such rules and regulations as the petitioner [Sterling] may establish or adopt.' In the abstract in the case . . . are shown plans of the subdivision of Section No. 1 into lots. There is no reference to Section No. 2 being the 'other land' referred to in the petition.''

In addition to the facts summarized above the judge stated: ''I find that the specific reference to the beach rights as set out in the deed from Sterling to Procter of lots in Section No. 1 . . .; that the failure to mention beach rights in the deed from Sterling to Procter of the land in Section No. 2 . . .; that the specific denial of beach rights to the parcel conveyed out of Section No. 2 to Sullivan [the 1947 conveyance] . . .; that the statement[s] and conduct of Gutterman acting for Sterling, and those statements of Procter show an intent to confine the beach rights to the lots in Section No. 1. I find further that the bill was filed within a reasonable time and that there are no laches. I find further that . . . the development of . . . Section No. 1

was under a general building scheme; that no structures other than seats, shelters or other similar structures were to be erected on . . . Sandy Beach Reservation . . .; that the appurtenant easement to use the 'Sandy Beach Reservation' was not limited or dismissed by the restrictive covenants expiring January 1, 1956. I find . . . that the defendant Haley . . . and . . . Procter do not and did not have the right to grant as appurtenant to the land in Section No. 2 . . . the right to use Sandy Beach Reservation . . . ."

A final decree was entered in which Haley was enjoined "from granting to any grantee or grantees . . . [of land in Section No. 2] any appurtenant right to use Sandy Beach Reservation . . . for recreation; . . . from erecting or building . . . [thereon] any structures other than seats, shelters or similar structures; . . . [which must not] interfere with the plaintiffs' easement to use . . . Sandy Beach Reservation for recreation . . . ." The bill was dismissed as to the other defendants, who are described in the plaintiffs' bill of complaint as "owners of . . . lots in Section 2 . . . that also purportedly received from their grantor easements appurtenant thereto consisting, inter alia, of the right to use said Sandy Beach Reservation for recreational purposes in common with others."

General Laws c. 185, § 47,[3] provides that when land is registered, the decree of registration "shall set forth . . . in such manner as to show their relative priority . . . all *particular* . . . easements . . . to which the land or the owner's estate is subject" (emphasis supplied). Under G. L. c. 185, § 45, "[s]uch decree shall not be opened . . . by any proceeding at law or in equity for reversing judgments or

---

[3] "Every decree of registration shall bear date of the year, month, day, hour and minute of its entry and shall be signed by the recorder. It shall state whether the owner of the land registered is married or unmarried, and if married, the name of the husband or wife. If such owner is under disability it shall state the nature thereof, and if a minor, shall state his age. It shall contain a description of the land as finally determined by the court, shall set forth the estate of the owner and also, in such manner as to show their relative priority, all particular estates, mortgages, easements, liens, attachments and other encumbrances, including rights of husband or wife, if any, to which the land or the owner's estate is subject, and may contain any other matter properly to be determined in pursuance of this chapter. The decree shall be stated in a form convenient for transcription upon the certificates of title hereinafter mentioned."

decrees.''[4]   General Laws c. 185, § 46, states: ''Every peti-
tioner receiving a certificate of title in pursuance of a decree
of registration, and every subsequent purchaser of regis-
tered land taking a certificate of title for value and in good
faith, shall hold the same free from all encumbrances except
those noted on the certificate.''[5]   If, as Haley contends, the
present suit is actually a ''collateral attack'' on the 1931
registration decree, there is grave doubt as to whether the
plaintiffs are entitled to maintain it.

''The purpose of registration law is to bind the land and
to quiet title to it.   Registration is conclusive upon every
one, with a few exceptions . . ., and the rights of innocent
purchasers for value are given special protection.''   *Mala-
guti* v. *Rosen,* 262 Mass. 555, 567–568.   *Michaelson* v. *Silver
Beach Improvement Assn. Inc.* 342 Mass. 251, 260.   As the
judge noted the decree of registration refers to easements
which were imposed by deed and which would thereafter be
imposed.   But the language of the decree does not satisfy
the requirement of the statute that ''particular . . . ease-
ments'' be set forth.   The judge stated that the petition for
the 1931 decree refers to the ''right of the grantees of the
petitioner's [Sterling's] other land'' to use the registered
land for recreation.   General Laws c. 185, § 47, provides
that the ''decree shall be stated in a form convenient for
transcription upon the certificates of title hereinafter men-
tioned.''   This provision lends emphasis to the view that a
decree of registration is to be a reasonably self-contained
document.   In light of both § 47 and previous decisions of
this court, we are not inclined to the opinion that the peti-
tion for registration constitutes part of such a decree.   See
*Holcombe* v. *Creamer,* 231 Mass. 99, 103; *Ott* v. *Board of
Registration in Medicine,* 276 Mass. 566, 570–571; *Boston* v.
*Santosuosso,* 308 Mass. 189, 194.

However, even if arguendo we treat the petition as part
of the decree, we are not satisfied that with regard to the
easements claimed for all the lots in Section No. 1, the re-

---

[4] The various statutory exceptions to this rule do not appear to be relevant
to the facts of this case.

[5] See fn. 4, *supra.*

quirement of particularity is met.   A prospective purchaser
of registered land, learning that such land is subject to an
easement for the benefit of "the petitioner's [Sterling's]
other land," would hardly be enlightened as to the extent or
nature of the easements or as to the persons who are bene-
fited thereby.   Nor would such a purchaser be certain that
the easement would be for the benefit of land which the peti-
tioner (Sterling) had conveyed prior to entry of the decree.
A decree of registration is "a definitive judgment that binds
the parties, even though it does not conform to the evidence
or the findings . . .. If the failure to make the decree so
conform was error, it could have been corrected only upon
some seasonable and legally recognized proceeding for ap-
pellate or other review." *Hill* v. *Taylor,* 319 Mass. 5, 6.
*Malaguti* v. *Rosen, supra,* 567–568.   See *Studley* v. *Kip,* 245
Mass. 242, 243.

The 1931 decree does not show that particular easements
had been granted to any of the plaintiffs.   In these circum-
stances, pursuant to G. L. c. 185, § 46, it may be that the only
valid easements to use Sandy Beach Reservation are those
"noted on the certificate [of title]." [6]   If the deeds contain-
ing the easements noted on the certificate expressly state
that only owners of lots in Section No. 1 are entitled to use
Sandy Beach Reservation, neither Procter nor Haley had
authority to grant any other owners an appurtenant ease-
ment to use this land.   We are of opinion that neither the
incorporation by reference of Hannah Sweet's deed into the
deeds noted on the certificate nor any of the other circum-
stances referred to by the judge was sufficient to show that
any easements so noted were particularly limited to owners
in Section No. 1.

On the basis of our holding in *Killam* v. *March,* 316 Mass.
646, 648–651, we think that if at the time Haley purchased
Sandy Beach Reservation it knew of easements exclusive or

---

[6] Haley's certificate of title indicates that easements to use Sandy Beach
Reservation were granted by Sterling and Procter in deeds subsequent to the
decree of registration.   We cannot determine from the judge's findings whether
the easements claimed by any of the present plaintiffs are those indicated on
the certificate of title, nor can we determine the precise language by which
*these* easements were granted.

otherwise, previously granted by deed, these easements will be enforceable to the extent of Haley's knowledge even if not appearing on the decree of registration or the certificate of title. The same rule of enforceability applies to each purchaser of lots in Section No. 2 who by deed has been granted easements to use Sandy Beach Reservation. The judge's findings do not show whether Haley or any other purchaser knew of the easements claimed by owners in Section No. 1. Accordingly, the decree is reversed, and the case is remanded to the Land Court for further proceedings consistent with this opinion.

*So ordered.*