DOROTHY L. BUTLER & others *vs.* HALEY GREYSTONE
CORPORATION & others.[1]

Essex.   February 10, 1967. — March 22, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Easement. Beach. Real Property,* Registered land: easement. *Notice. Land Court,* Rehearing.

Where a decree of the Land Court was reversed and the case was re-
manded to that court "for further proceedings," the judge properly
took further testimony and exhibits and made additional findings and
rulings on the original record and such expansion thereof.   [253]

The record of a proceeding in the Land Court justified conclusions that
there was a comprehensive scheme for the development of a tract of
seashore land, including the creation, as appurtenant to and for the
exclusive benefit of the several lots in the tract, of easements to use a
beach area forming part of the tract, that the owner of the beach area
had notice of the scheme, and that the granting of easements to use the
beach area for the benefit of any land outside the tract was precluded.
[255–256, 258]

BILL IN EQUITY filed in the Superior Court on October 22,
1959, and subsequently transferred to the Land Court.

Following the decision of this court reported in 347 Mass.
478, the case was reheard by *McPartlin, J.*

*Lewis L. Whitman* for Haley Greystone Corporation.

*Bernard N. Abrams* (*William E. McKeon* with him) for
Dorothy L. Butler & others.

CUTTER, J.   This bill in equity to determine rights in
Sandy Beach Reservation (the beach) in Marblehead
was before this court in *Butler v. Haley Greystone Corp.*
347 Mass. 478 (the first *Butler* case).   Because of uncer-
tainties in the Land Court judge's findings upon a long,
confusing record (1158 pages of testimony, 316 exhibits,

---

[1] The plaintiffs are all owners of lots in Section No. 1 of an area known as
Greystone Beach.   The defendants other than Haley Greystone Corporation
(the only defendant to claim an appeal) are owners of land in Section No. 2
of the Greystone Beach area.

and 111 printed pages of proceedings), the decree was reversed and "[t]he case . . . [was] remanded to the Land Court for further proceedings consistent with the opinion."

Further testimony has been taken and twenty-three additional exhibits have been received. The Land Court judge, who properly treated the whole record (including that before this court in the first *Butler* case) as before him, has made additional findings and rulings. The present appeal by Haley Greystone Corporation (H–G) is from a new final decree.[2]

We need not restate in detail the facts described in the first *Butler* case, 347 Mass. 478. The principal question is whether persons, other than owners in Section No. 1, now have or may be given the right to use the beach for recreation.

1. In the first *Butler* case, upon the findings and record then before the court, views were expressed for the guidance. of the Land Court on remand. The Land Court judge's new findings upon the whole record in some degree clarify the situation, which we reëxamine to determine whether there is basis for the new final decree.

It was open to the trial judge to hold such further hearings and to make such findings and rulings as might be required by the record as expanded. He was not required by our opinion or rescript in the first *Butler* case to limit the range of his further inquiry. See *Long* v. *George,* 296 Mass. 574, 577; *Fisher* v. *MacDonald,* 335 Mass. 429, 431. See also *Woodworth* v. *Woodworth,* 273 Mass. 402, 406–408.

2. In his new findings, the Land Court judge first men-

2 The new final decree declared that named plaintiffs had title to their respective lots in Section No. 1 and also had, as appurtenant to their respective lots in Section No. 1, the right to use the beach in common with Sterling Realty Company (Sterling), its successors, grantees and assigns, subject to Sterling's rules and regulations. The new decree enjoined H–G, its successors and assigns, from (a) granting to any grantee of any portion·of the unregistered land conveyed to H–G by one Procter and his wife on March 25, 1959. (which was all the land then owned by the Procters in Section No. 2), any appurtenant right to use the beach; (b) granting beach rights to any person, as appurtenant to land not in Section No. 1; (c) erecting on the beach any structures other than seats and shelters which would interfere with .the plaintiffs' easements to use the beach; and (d)' interfering with those easements. The bill was dismissed as to the remaining defendants.

tions an ambiguous provision of the 1931 registration decree concerning the beach,[3] upon which we commented in the first *Butler* case, 347 Mass. 478, 482, 484. He now states

SIMPLIFIED SKETCH MAP OF SECTION NO. 1 BASED ON
EXHIBIT 18

(Plan Book 54, Plan 60, recorded July 5, 1928).
[Section No. 2 is not shown on the recorded plans in
evidence.]

---

[3] "The land hereby registered is subject to the restrictions, rights and easements heretofore granted or imposed by deeds and which may hereafter be so granted or imposed by the petitioner [Sterling] and its successors in title, till all other land acquired by the petitioner under deed ·from Ellen G. Furlong, dated October 19, 1925 . . . has been sold." The registered land is known as the Sandy Beach Reservation. There is no suggestion in the quoted language that easements could be imposed upon the beach in favor of any land other than Section No. 1 and Section No. 2 acquired by the 1925 deed.

that H–G admitted in its answer that "there is appurtenant
to each lot in Section No. 1" as shown on certain substan-
tially similar recorded plans of Section No. 1, filed from
1926 to 1928, "the right to use" the beach.   H–G's state-
ment (par. 10 of its answer, "that . . . [H–G] avers that
rights to Sandy Beach Reservation are for the benefit of
both Section [No.] 1 and Section [No.] 2") may be some-
what less explicit than the judge suggests.   Nevertheless,
H–G's transfer certificate of title (No. 28249) refers spe-
cifically to a substantial number of deeds from Sterling,
given in 1931 and thereafter,[4] creating recreation easements
over the beach for the benefit of particular lots in Section
No. 1.

These deeds mentioned in H–G's 1959 certificate of title,
taken together, sufficiently refer to a comprehensive scheme
for the development of Section No. 1 (see *Sterling Realty
Co.* v. *Tredennick*, 319 Mass. 153, 156) and for granting
beach rights to purchasers of each of the lots in Section
No. 1.   H–G, from the 1959 transfer certificate of title, re-
ceived notice of the easements of the lot holders in Sec-
tion No. 1, and was charged with notice of various deeds
which showed the general development scheme affecting
Section No. 1 and referred to the recorded plans of that
development.[5]   We hold that (a) the ambiguous provisions
(fn. 3) both of the 1931 decree and of H–G's 1959 certificate

---

[4] Each such deed of a particular lot on the plan of Section No. 1 states that
the lot is conveyed, "together with the right as appurtenant to said lot to
use 'Sandy Beach . . . Reservation' as shown on said plan for recreation, in
common with the grantor [Sterling], . . . [its] successors, grantees and as-
signs, subject to such . . . regulations as the grantor may establish."   Each
such deed given prior to January 1, 1956, is expressed as being "subject to
the exceptions and reservations and subject to and with the benefit of the
restrictions" in Sterling's April, 1926, deed to Hannah Sweet.

[5] The Land Court judge's findings concerning H–G's knowledge in 1959 of
the extent of the easements affecting the beach rest wholly upon H–G's knowl-
edge of recorded instruments.   The judge refers to no other facts establishing
any special knowledge on the part of H–G.   As to the effect of references to
deeds and plans, including those establishing a general scheme, see *Dubinsky* v.
*Cama*, 261 Mass. 47, 53; *Ward* v. *Prudential Ins. Co.* 299 Mass. 559, 563–564.
See also *Goldstein* v. *Beal*, 317 Mass. 750, 755; *Murphy* v. *Mart Realty of
Brockton, Inc.* 348 Mass. 675, 678; Partridge, Deeds, Mortgages and Easements
(1947 ed.) 107–109, 255.   Powell, Real Property, § 409.   Cf. *Olson* v. *Arruda*,
328 Mass. 363, 365.

of title, and (b) the deeds noted on the 1959 certificate,[6] sub-jected the beach to recreation easements in favor at least of (a) all Sterling's pre-1931 grantees of lots in Section No. 1, and (b) all grantees of lots in Section No. 1 under later deeds from Sterling when duly recorded and noted upon the certificate of title.

3. By the time the Procters (who received a deed to land in Section No. 2 from Sterling, see fn. 2, in 1955) and H-G in 1959 took title to land in Section No. 2, the following facts lent support to the plaintiffs' view that the beach easements were for the exclusive benefit of Section No. 1 lots. (a) The beach was part of the first parcel acquired by Sterling from one Furlong (fn. 3) and had no necessary connection with the second parcel. (b) Three plans of Section No. 1 had been recorded, each showing the beach as part of Section No. 1. No such plan referred in any way to Section No. 2 or indicated that the general scheme related to Section No. 2. (c) Deeds from Sterling of all the lots in Section No. 1 had been recorded (although not all were noted on H-G's beach title certificate), each containing substantially the same beach easement and substantially the same restrictions. (d) Certain restrictions in deeds from Sterling of lots in Section No. 1 were expressed as binding only the land (wholly in Section No. 1) shown on the recorded plan. Where it was intended that rights should be reserved (e.g. easements for construction in roads) for the benefit of Section No. 2, the reservation was stated specifically. (e.) Section No. 2 was a considerable distance from the beach reservation and separated from it by the Section No. 1 land.[7]  (f) The only conveyance by Sterling of Sec-

---

[6] Because H-G by its own certificate of title to the beach was referred to deeds and plans showing the Section No. 1 scheme, we need not consider the effect of the additional circumstance that H-G in 1959 took title also to portions of the unregistered Section No. 2 land held by Sterling from 1925 to 1955, or consider what constructive notice of what instruments H-G may have had through the records as a purchaser of such land.

[7] The relatively small beach (the land sides of which, northwest and southwest, are respectively about 385 and 390 feet long), even if the easements were limited to the lots in Section No. 1, would be subjected to use by the occupants of about 100 houses. This may have some tendency to indicate that there was contemplated no wider use if a wider use would interfere unreasonably with

tion No. 2 land prior to the 1955 sale to the Procters expressly excluded that Section No. 2 parcel from any right to use the beach. (g) There is no showing that, during the thirty years of Sterling's ownership (1925–1955), there was any recorded plan of a proposed development of Section No. 2.[8] (h) The Sterling deeds showed a unified scheme of restrictions (see *Ward* v. *Prudential Ins. Co.* 299 Mass. 559, 561–564; see also *Snow* v. *Van Dam*, 291 Mass. 477, 481–486) affecting only Section No. 1, and for the benefit only of the lots in Section No. 1, thus affording basis for interpreting the easements expressed in the same deeds as intended to be for the benefit only of the same parcels.

Sterling in its deeds of lots in Section No. 1 might have stated more clearly (cf. *American Tel. & Tel. Co. of Mass.* v. *McDonald,* 273 Mass. 324, 325–326; cf. also *Baseball Publishing Co.* v. *Bruton,* 302 Mass. 54, 57) the intention that the beach easements were to be exclusively a part of the Section No. 1 scheme and for the benefit only of Section No. 1 lots. Nevertheless, we think such an intention is apparent from the instruments adequately referred to by the title certificates, viewed in the light of the somewhat unusual background circumstances shown by the findings and evidence. See Restatement: Property, §§ 242, 483, comment d; Am. Law of Property, §§ 8.65–8.66; Powell, Real Property, §§ 404 [2], 415, esp. at pp. 508, 515. We conclude that Sterling had no power in 1955 to grant any beach rights appurtenant to land other than lots in Section No. 1. That Sterling so interpreted the situation is suggested by its express statement that no beach easement was granted by its 1947 deed of a Section No. 2 lot.

---

the beneficial purpose of the beach easements given to grantees of Section No. 1 lots. See *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 292 Mass. 332, 334–335. See also *Greene* v. *Canny*, 137 Mass. 64, 67–69. Cf. *Perley* v. *Cambridge,* 220 Mass. 507, 513; *Merry* v. *Priest,* 276 Mass. 592, 600; *Perry* v. *Hewitt,* 314 Mass. 346, 349–351. See, however, cases stating that an easement which is to be exclusive must be clearly expressed to be so. *Pasadena* v. *California–Mich. Land & Water Co.* 17 Cal. 2d 576, 578–580. *Holbrook* v. *Telesio,* 225 Cal. App. 2d 152, 154–155.

[8] There is in the record a somewhat fanciful artist's sketch of a development of Section No. 2 around an artificial lagoon. This scheme does not appear prior to 1955 to have progressed beyond this point.

We have given consideration to the principles (a) that exclusive easements should be clearly expressed (see fn. 7); (b) that a "servient owner retains the use of his land for all purposes except such as are inconsistent with the right granted to the dominant owner" (see *Merry* v. *Priest*, 276 Mass. 592, 600); and that doubts are to be resolved in favor of freedom of land from servitude. See *Hemenway* v. *Bartevian*, 321 Mass. 226, 229; Am. Law of Property, § 8.66, p. 279; Powell, Real Property, § 405, pp. 391–392. Nevertheless, we are of opinion that, by the general scheme relating to Section No. 1 of which the beach was an integral part, it was sufficiently shown that Sterling's further rights to grant easements in the beach, after each successive conveyance of a Section No. 1 lot, were confined to such grants for the benefit only of its remaining lots in Section No. 1.

4. The final decree is affirmed.

*So ordered.*