Garsh, J.
The Trustees of Hawthorne Place Condominium Trust (the “Trustees”) brought this action against the defendant, Dr. Harilaos T. Sakellarides (“Sakellarides”), seeking an injunction to prevent Sakellarides from seeing patients at his office within the condominium complex “except during those hours contemplated by the Master Deed and Declaration of Trust and the Rules and Regulations ... [of the Trust] and from permitting any patients from coming through the condominium’s common areas at any time other than the normal office hours permitted by the Master Deed and Declaration of Trust and the Rules and Regulations all as amended.” The Trustees allege that they are entitled to this relief because Sakellarides has violated a rule or regulation of the trust, breached the By-Laws and breached the Master Deed. Sakellarides has moved for summary judgment on the grounds that the Trustees cannot demonstrate that he has violated any of these governing provisions. In response, the Trustees cross moved for summary judgment. For the reasons set forth below, Sakellarides’ motion for summary judgement is allowed.
BACKGROUND
The following facts are undisputed:
Hawthorn Place Condominium Trust (the “Trust”) is a condominium association created by a Declaration of Trust recorded with the Suffolk County Registry of Deeds. The condominium is located at 2 and 9 Hawthorne Place, Boston Massachusetts, and consists of 480 residential units and 25 office units with common elements as defined in the Master Deed. The Master Deed was recorded with the Suffolk County Registry of Deeds.
Sakellarides owns four office units where he engages in the practice of medicine. He consistently sees patients in his office units later than 8:00 p.m., and his patients use the common areas, including the hallways inside the building and adjacent to his units, as well as the plazas outside the building, as a waiting area during these hours.
Prior to 1984, the Rules and Regulations of the Trust regulated the use of office units as follows:
The Trustees shall have the right to take all such reasonable measures as they may deem advisable for the security of the Buildings and its occupants with respect to persons visiting the Office Units, including without limitation, the search of all persons entering or leaving the Buildings to or from the Office Units, the temporary denial of access to the Buildings and the closing of the Buildings to visitors to the Office Units (a) after regular business hours (i.e., 8:00 a.m. to 6:00 p.m.) on Monday through Friday, and (b) on Saturdays, Sundays and legal holidays, subject, however, to the right of each owner or occupant of an Office Unit to admittance to the Office Units at all times under such reasonable regulations as the Trustees may prescribe from time to time.
In 1984, this provision (the “Office Unit Rule”) was amended to provide as follows:
The Trustees shall have the right to take such reasonable measures as they deem advisable for the security of the Buildings and its occupants with respect to persons visiting the Office Units, including without limitation, the search of all persons entering or leaving the Buildings to or from the Office Units, the temporary denial of access to the Buildings and the closing of the Buildings to persons visiting the Office Units; provided however, that access to the office shall not be denied (except for cause) to any patients, clients or customers of any occupant of an Office Unit during the period from 7:00 a.m. to 8:00 p.m. on Monday through Friday, and during the period from 9:00 a.m. to 5:00 p.m. on Saturdays, except in the case of legal holidays on which the Buildings may be closed and access denied, and provided further that each Unit Owner or occupant of an Office Unit (or any individual or individuals personally accompanied by such owner or occupant of an Office Unit) shall have a right of access to the Office Units at all times subject to such reasonable rules and regulations as the Trustees may prescribe from time to time.
The 1984 amendments were recorded in the Suffolk County Registry of Deeds. The Declaration of Trust incorporates the Rules and Regulations of the Trust into the By-Laws .
The Master Deed prohibits use of a unit in a manner contrary to or inconsistent with the By-Laws of the Trust or the Rules and Regulations. It requires each unit owner to comply with the terms of the Master Deed, the Declaration of Trust, and with the By-Laws and Rules of Regulations of the Trust.
The Trustees estimate that Sakellarides has been seeing too many patients for approximately ten years. In 1989, Sakellerides requested the Trustees to change the later weekday hour specified in the Office Unit Rule to 10 p.m. The Office Unit Rule, however, was not amended. In response to complaints about noise from owners or occupants of units located close *722 to the defendant’s units, the Trust has requested that Sakellarides “comply with the established office hours;” Sakellerides wrote to the Trust in 1994 that he regretted the “discord and discomfort” caused by his patients congregating and littering outside 3 Hawthorne Place and that he would “continue to make eveiy effort to prevent such behavior from happening in the future.” He also assured the Trustees that he would continue to “make every effort possible to comply with the Rules and Regulations” of the Trust. The Trustees believe that the late use of the common areas by Sakellerides’ patients poses security problems.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the parties are entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating both the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, the moving party may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
In the present case, both the plaintiffs and the defendant agree that it is appropriate to resolve this action by way of sumarry judgment because what is required is the interpretation of unambiguous Rules and Regulations of the Trust. Sakellarides asserts that nothing in the Office Unit Rule precludes him from seeing patients after 8:00 p.m. and that the Trust, therefore, has charged him with violating a non-existent and unenforceable condition. The Trust, on the other hand, contends that the express terms of the Rules and Regulations preclude Sakellarides from seeing patients outside of the established periods of 7:00 a.m. to 8:00 P.M. on weekdays and 9:00 a.m. to 5:00 p.m. on Saturdays even if patients are accompanied into the unit by Sakellarides personally.
Pursuant to G.L.c. 183A, §4(3), a unit owner must comply with by-laws, rules and regulations, andlawful covenants, conditions and restrictions set forth in the master deed and unit deed. The interpretation of rights and obligations stemming from condominium by-laws and rules and regulations presents a question of law for the court. Where a person’s right to use his or her own property is involved, any ambiguity must be construed in favor of freedom of the properly from that restriction. Johnson v. Keith, 368 Mass. 316, 320 (1975); Butler v. Haley Greystone Corp., 352 Mass. 252, 258 (1967). An ambiguity is not created, however, simply because a controversy exists between parties, each favoring a different interpretation. Cf. Jefferson Insurance Co. v. Holyoke, 23 Mass.App. 472, 475 (1987).
Here, the Office Unit Rule is clear and unambiguous. It provides the Trustees with certain rights and goes on to limit the circumstances in which those rights may be exercised. More specifically, the Trustees may — but are not required to — do the following:
1. take reasonable measures for the security of the Buildings and its occupants with respect to persons visiting the Office Units;
2. search all persons entering or leaving the Buildings to or from the Office Units; and
3. temporarily deny access to the Buildings and close the Buildings to visitors to the Office Units.
The third enumerated right — closing the Buildings to visitors to the Office Units — may not be taken:
1. between 7:00 a.m. to 8:00 p.m. on Monday through Friday if the visitor is a patient, client or customer of the occupant of an Office Unit (except for cause);
2. between 9:00 a.m. to 5:00 p.m. on Saturdays if the visitor is a patient, client or customer of the occupant of an Office Unit (except for cause); or
3. if the visitor is personally accompanied by the Unit Owner or occupant of an Office Unit.
In sum, the Office Unit Rule, as promulgated, permits the Trustees to take certain actions at certain times and under certain circumstances. If, as here, the Trustees do not exercise their rights to take certain actions, there is nothing in the Office Unit Rule that purports to impose an independent obligation upon the Unit Owner to refuse to admit patients to his office unit after a certain hour or to require patients already there to leave. Contrary to the interpretation advanced by the Trustees, the Office Unit Rule does not establish “regular business hours” or hours when office unit owners may not conduct business within their units. Indeed, unlike the original language, the amended rule does not even contain a reference to the term “regular business hours.” Thus, Sakellarides did not violate the Office Unit Rule, the By-laws, or the Master Deed by seeing patients after 8 p.m. on weekdays.[2]
Nothing Sakellarides has said to the Trustees requires a different conclusion. As the Trustees concede, the fact that Sakellarides sought to amend the Office Unit Rule as well as what he may have said when complaints were made to him is relevant only in the event that the Office Unit Rule is deemed ambiguous. The Court agrees with the Trustees that it is not.[3]
The Trustees have also not demonstrated that Sakellarides violated the Office Unit Rule by not complying with “reasonable measures” taken by the Trust. *723 The record does not establish that any reasonable security measures were taken by the Trustees. The only measures taken by the Trustees were to insist that Sakellarides comply with a non-existent condition of the Office Unit Rule and to file this action seeking injunctive relief predicated on violation of the same non-existent condition.
Sakellarides is entitled to summary judgment because the injunction sought by the Trustees would impose restrictions on an office unit owner not required by the Rules and Regulations of the Trust. As a matter of law, the Trustees are not entitled to the injunctive relief requested.
ORDER
For the foregoing reasons the defendant’s Motion for Summary Judgement is ALLOWED.

The Trustees do not alternatively argue that Sakellarides violated the Office Unit Rule by permitting unaccompanied patients to enter his office units because the Trustees construe the Office Unit Rule as prohibiting patients to enter those office units outside the designated times even if accompanied by Sakellerides himself. The Rules and Regulations are unambiguously to the contrary. “[A]ny individual or individuals personally accompanied by [an] owner of occupant of an Office Unit shall have a right of access to the Office Units at all times subject to such reasonable rules and regulations as the Trustees may prescribe from time to time,’’ which rules and regulations have not been prescribed. “Any” means “any” and not “anyone other than a patient, client, or customer.” In any event, the reference in the Office Unit Rule to any person being permitted access if accompanied appears in the context of defining the limits on the Trustee’s powers to exclude and not in the context of establishing those times when a unit holder must accompany a visitor.

Moreover, the fact that Sakellarides may have sought to amend the By-Law to clear up a long standing dispute with the Trustees or that he promised to use his best effort to ensure that his patients did not litter or congregate outside the building and represented that he was making “every effort possible to comply with the Rules and Regulations" of the Trust is not persuasive evidence that he interpreted the Office Unit Rule in the same fashion as did the Trustees.