### MARY M. RUPP'S CASE.

Suffolk.    April 4, 1967. — June 7, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Street risk.

A visiting nurse was entitled to workmen's compensation under G. L. c. 152, § 26, where it appeared that she was injured by slipping and falling on a sidewalk while on her way home during a working day after the director of nurses had suggested that she go home early because of stormy weather but had told her that she would be "on call until her usual quitting time."

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board denying compensation under the Workmen's Compensation Act.

The case was heard by *Mitchell, J.*

*James B. Winward,* for the insurer, submitted a brief.

*James F. Mahan* (*Jeanne M. Maloney* with him) for the employee.

REARDON, J.    The reviewing board affirmed and adopted the findings and decision of the single member and denied

the claim for compensation. The final decree of the Superior Court adjudged that the employee had suffered a personal injury arising out of, and in the course of, her employment and remanded the case to the Industrial Accident Board for the purpose of computing total disability and dependency compensation which, with counsel fees, was ordered paid. The insurer appealed. There was no error.

The single member found that the employee was a registered nurse employed by the Revere Visiting Nurse Association who worked five days a week from 8:30 A.M. to 4:30 P.M. Upon reporting to work each morning she would be given a list of calls to be made. The association had one automobile and she and one or more of her associates employed it in their rounds. She usually reported back during the day for further instructions on additional calls. On January 13, 1964, it was snowing and sleeting. She reported as usual after a ten minute walk from her home and made her assigned calls during the morning. "The storm worsened and the director of nurses suggested that she and her associate . . . take the car to the garage and leave it there, and then go home for the remainder of the day, because of the storm. She further told the employee that she would be 'on call' until her usual quitting time; that is, 4:30 P.M." The associate drove the car to the garage and the employee left it. While on her way home she fell on a slippery sidewalk and injured her right wrist.

The conclusion of the single member was that "[t]he employee's trip from the garage to her home was not a part of the 'business affairs or undertakings of her employer.' The fact that she was excused from work for the afternoon was for her convenience and safety, and the fact that she was to remain 'on call' did not make the trip between the garage and her home a trip in the course of the employer's business." We view this conclusion as an error of law. Injury to the employee occurred while, in response to her employer's direction, she was making her way home where, as she testified (as the only witness), she was "obliged to stay . . . until at least 4:30" subject to

possible further instruction. As the employee has pointed out in her brief, this distinguishes this case from *Jarek's Case,* 326 Mass. 182, where the employee left his place of employment with permission to return home for the purpose of telling his wife he was going to work late. See *Simmons's Case,* 341 Mass. 319. Prior to her injury there was no break in time when it might be said that this employee was not acting subject to instructions by her employer and in the course of her employment. See *Souza's Case,* 316 Mass. 332, 335–336. Cf. *Levin v. Twin Tanners, Inc.* 318 Mass. 13, 17–18.

*Decree affirmed.*