CHARLES N. WORMSTEAD, III, vs. TOWN MANAGER OF
SAUGUS & others.[1]

Essex.    January 18, 1974. — March 28, 1974.

Present: HALE, C.J., ROSE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Police.    Equity Pleading and Practice,* Master: confirmation of report,
findings, conclusions from findings.    *Words,* "In the performance
of . . . duty."

An exception to a master's report in a suit in equity was improperly
sustained on the ground that a certain subsidiary finding was not
warranted by the evidence where the evidence before the master
was not taken stenographically and the excepting party had not
sought to bring any evidence before the court under Rule 90 of the
Superior Court (1954).    [106-107]

In the absence of the evidence before a master in a suit in equity, his
subsidiary findings must stand unless they are mutually incon-
sistent, contradictory, plainly wrong, or vitiated in view of the
controlling law.    [107]

It is the duty of the trial court and of this court in a suit in equity to
draw its own conclusions from the subsidiary findings reported by
a master when they are all the subsidiary findings on which his
conclusions were based.    [107]

On all the facts, a police captain on night duty, who was "off duty"
and entitled to go where he wished, although on call, during a
scheduled "lunch period" in which he drove to his home in his
own automobile and, while returning to his place of duty at a
police station, was involved in an automobile accident through no
fault of his and thereby became incapacitated for police duty, was
not so incapacitated "because of injury sustained in the perform-
ance of his duty" within G. L. c. 41, § 111F, and was not entitled
thereunder to leave without loss of pay for the period of his
incapacity.    [107-109]

[1] The treasurer of the town and its chief of police.

BILL IN EQUITY filed in the Superior Court on February 7, 1972.

The suit was heard by *Brogna, J.,* on a master's report.

*Bradbury Gilbert,* Town Counsel (*David L. Taylor* with him) for the defendants.

*Francis J. Tobin* for the plaintiff.

GRANT, J.   This is a bill for declaratory relief brought by a Saugus police officer who seeks a binding determination that he is entitled, by reason of the provisions of G. L. c. 41, § 111F (as appearing in St. 1964, c. 149),[2] to be granted leave without loss of pay for the period of an incapacity for duty.   The case was referred to a master under Rule 86 of the Superior Court (as amended effective June 1, 1970).   A judge, acting in response to various exceptions filed by the plaintiff, modified the master's report in certain respects and entered an interlocutory decree confirming the report as so modified. The defendants have appealed from that interlocutory decree and from the final decree, which determined that the plaintiff was entitled to the relief prayed for.   The following is a summary of the subsidiary facts found by the master.

On the night in question (November 27, 1971) the plaintiff, a captain in the Saugus police department, was the commanding officer of the department's night division.   As such, and except as hereinafter indicated, he had charge of the department during his tour of duty (5:00 P.M. to the following 1:00 A.M.), subject only to the orders of the chief of the department; he was cloaked with discretionary authority, in the chief's absence, to

---

[2] "Whenever a police officer . . . of a . . . town . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, or a police officer . . . assigned to special duty by his superior officer, whether or not he is paid for such special duty by the . . . town, is so incapacitated because of injuries so sustained, he shall be granted leave without loss of pay for the period of such incapacity . . .."

"take over" in the event of serious crimes or other emergencies; he supervised the activities of six other officers. His primary duty was in the station. The principal exception to these arrangements was that the plaintiff was not held responsible for what might happen during his scheduled lunch period; the desk officer whom the plaintiff might leave in charge of the station was delegated, and took the responsibility for, the entire night division and what might occur during the plaintiff's lunch period. Only if that officer were faced with a situation he could not handle would he get in touch with the plaintiff. The plaintiff was considered to be "off duty" while at lunch, although he was paid by the town for the time so spent as it was included in his forty-hour work week.

The particular time for the plaintiff's lunch period (8:00 P.M. to 8:45 P.M.) was established by a written order of the chief scheduling staggered lunch periods for all the members of the night division which were to be observed unless an emergency should arise. The purpose of the lunch periods was to allow each officer to get something to eat during his tour of duty. During his scheduled lunch period the plaintiff, like any other officer, could go anywhere or do anything he wanted so long as he left word at the station as to where he could be reached (by telephone or by walkie-talkie) in the event of an emergency.

Like every other officer, the plaintiff was on call twenty-four hours a day, whether on or off duty. There had been occasions when the plaintiff had been recalled to the station during his lunch period. An off-duty officer who observed an accident caused by a driver who was under the influence of intoxicating liquor was expected to stop the offender and arrest him. The plaintiff had, on past occasions, made arrests during his lunch period.

On the night in question the plaintiff started his scheduled lunch period at 8:00 P.M., leaving the desk

officer in charge of the station. He drove to his home in his own private automobile. The trousers were the only part of his uniform which he was wearing; he carried his service revolver. At 8:30 P.M. the plaintiff picked up some investigation papers involving a stolen police cruiser which (for some unexplained reason) were in his home. As he was driving back to the station in his own automobile he was involved, without fault on his part, in an automobile accident which, it is agreed, resulted in incapacitating him for further police duty (at least until the time of the hearing before the master).

Immediately following the accident the plaintiff got out of his automobile, identified himself as a police officer to the operator of the other automobile, and raised his arms to push that operator out of the way of traffic passing in the roadway. As he raised his arms he felt a shock of pain across his back and shoulders. He directed traffic around the scene of the accident until other officers arrived. He did not arrest the other operator, who was arrested by another officer and subsequently prosecuted for driving under the influence of intoxicating liquor. He drove his own badly damaged automobile to his home, taking with him the investigation papers previously referred to.[3] He was then taken to a hospital in a police cruiser.

The plaintiff has been refused leave without loss of pay for the reason, as stated by the chief of police (after having sought the advice of town counsel), that the injuries sustained by the plaintiff were "not considered to be . . . service connected."

1. We deal first and briefly with the action of the court below in sustaining six of the plaintiff's seven exceptions to certain findings and conclusions set out in the master's report. The first exception was sustained on the ground that a particular subsidiary finding was not

---

[3] Those papers were still in the plaintiff's home at the time of the hearing before the master.

warranted by the evidence. Such action was in error because the evidence before the master was not taken stenographically and because the plaintiff had made no effort to bring any of the evidence before the court in the manner provided by the second paragraph of Rule 90 of the Superior Court (1954). The announced basis for the court's sustaining the plaintiff's second exception was that certain subsidiary findings made by the master did not warrant another subsidiary finding made by him. "Where the evidence is not reported both the trial judge and the appellate justices are required to treat the master's findings of fact as binding unless they are mutually inconsistent, contradictory, plainly wrong or vitiated in view of the controlling law." *Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 825 (1973). The master's findings in this case were not subject to any of the defects just listed. The other four exceptions may be ignored because they were addressed to ultimate conclusions of the master.[4] "[W]here [as here] the master in his report sets forth all of the subsidiary findings upon which he bases an ultimate conclusion, it is the duty of the trial court, and of this court, to draw its own inferences from those findings." *Corrigan* v. *O'Brien*, 353 Mass. 341, 346 (1967). See also *Blanchette* v. *Blanchette*, 362 Mass. 518, 522 (1972), and cases cited.

2. As was stated by the Supreme Judicial Court in the case of *Pettinella* v. *Worcester*, 355 Mass. 412, 415 (1969), "The nub of the plaintiff's contention is whether it can be found . . . that he was in the performance of his duty when injured. *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 340 Mass. 109 [1959], held that language similar to that of G. L. c. 41, § 111F, is to be interpreted in a more restrictive sense than the

---

[4] The master's ultimate findings (expressly stated to be based on his subsidiary findings and on admissions in the pleadings) include ones to the general effect that insofar as it was a question of fact (or of mixed law and fact) the plaintiff's injury was not sustained "in the performance of his duty" within the meaning of G. L. c. 41, § 111F.

language of § 26 of the Workmen's Compensation Act, G. L. c. 152.[5] As was there stated, the statute is to be so interpreted that recovery is predicated on the fact that the employee's injuries resulted from his duties and also that they were sustained while in performance of those duties. These are conjunctive requirements." In the *Pettinella* case it was determined that a police officer who, without fault on his part, was injured and incapacitated while necessarily using his own automobile in connection with an extra-duty traffic detail to which he had been specifically assigned by his superior officer was entitled to the benefit of the provisions of G. L. c. 41, § 111F, as amended.

In the *Boston Retirement Bd.* case (340 Mass. 109) which was cited in the *Pettinella* case it was held that an operating room nurse who was injured, while on her way home to lunch, when she tripped and fell on a flight of stairs located in the hospital where she was employed was not entitled to the benefit of a statute (G. L. c. 32, § 7, as amended) which provided for the retirement for accidental disability of an employee "who becomes . . . incapacitated for further duty . . . by reason of a personal injury sustained . . . as a result of, and while in the performance of, his duties . . . ." In the immediately ensuing case of *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 340 Mass. 112 (1959), a like result was reached under the same statute with respect to a matron who was injured, while returning from lunch, when she fell in a hole on the premises of the stadium where she was employed.

We are bound (see point 1 above) by the subsidiary findings of the master to the effect that the plaintiff was "off duty" during his lunch period, which was when the accident occurred. That being so, we are of the opinion that the principles enunciated and the results reached in

[5] See, under G. L. c. 152, § 26, *Rupp's Case,* 352 Mass. 658, 659-660 (1967). Contrast *Jarek's Case,* 326 Mass. 182, 183-184 (1950).

the cases just cited require us to hold that this plaintiff was not "incapacitated for duty because of injury sustained in the performance of his duty" within the meaning of G. L. c. 41, § 111F.

We are not impressed with the plaintiff's argument concerning the chief's order establishing the time for the plaintiff's lunch period; as we read the findings, there was nothing in that order which required the plaintiff to eat or to take his lunch period away from the station. We do not think it important that the plaintiff was on call during his lunch period; he had not, in fact, been recalled at the time of the accident. We attach no significance to the plaintiff's possession of investigation papers at the time of the accident. We reject any notion that a captain of police should be preferred over a probationary patrolman in determining the proper construction to be placed on § 111F. The fact that the plaintiff experienced pain when he raised his arms to protect the operator of the other vehicle involved in the accident did not tend to prove that the injuries (or the resulting incapacity) sustained in the course of the accident were compensable under the statute. Contrast *Voutour* v. *Medford,* 335 Mass. 403 (1957). Other arguments do not merit individual discussion.

3. The defendants in their brief request us to remand the case to the Superior Court for a determination by it of amounts which the town has paid to the plaintiff pursuant to a "restraining order," and for the entry of an order requiring the plaintiff to refund such amounts to the town. The record and the docket entries before us disclose that upon the filing of the bill a short order of notice was issued to the defendants to show cause why a preliminary injunction should not be issued, and that on the return day of that order an interlocutory decree was entered for the speedy completion of the pleadings. No temporary restraining order or preliminary injunction appears to have been entered. There are certain docket entries which suggest a possibility that the trial judge

may have acted under the provisions of G. L. c. 214, § 21, to enter some form of order pending this appeal. If so, no such order has been brought before us for review under G. L. c. 214, § 21 or § 22, as amended, under either of which this court may act (with respect to action taken in the Superior Court) by reason of the provisions of G. L. c. 211A, §§ 5, 10, and 13 (each as inserted by St. 1972, c. 740, § 1). Any question which may exist has not been argued within the meaning of Rule 1:13 of this court. See *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 (1958). Accordingly, we decline to consider the question, if there is one. See *All Stainless, Inc.* v. *Colby,* 364 Mass. 773, 782 (1974).

The interlocutory decree with respect to the master's report and the final decree are reversed. A new interlocutory decree is to be entered confirming the master's report as filed. A new final decree is to be entered declaring that the plaintiff is not entitled to leave without loss of pay under the provisions of G. L. c. 41, § 111F, as amended.

*So ordered.*