CHARLES N. WORMSTEAD, THIRD, *vs.* TOWN MANAGER OF SAUGUS & others.[1]

Essex.    November 6, 1974. — January 20, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Police.    Words,* "In the performance of . . . duty."

A police captain, who, without fault on his part, was incapacitated for duty by an injury sustained in a traffic accident while returning to the police station from his "lunch break," a period for which he was being paid, when he was on call, and while he was engaged in activities helpful to the accomplishment of police functions, was held to have been injured "in the performance of his duty" under G. L. c. 41, § 111F, and to be entitled to leave without loss of pay. [662-667]

BILL IN EQUITY filed in the Superior Court on February 7, 1972.

The suit was heard by *Brogna,* J., on a master's report.

*Francis J. Tobin* for the plaintiff.

*Bradbury Gilbert,* Town Counsel (*David L. Taylor* with him) for the defendants.

QUIRICO, J.    The plaintiff, a policeman, brought this bill for declaratory and other relief in the Superior Court to establish his claim of right to be granted leave without loss of pay under G. L. c. 41, § 111F, as appearing in St. 1964, c. 149. This statute, in so far as it pertains to this case, grants leave without loss of pay to a police officer "incapacitated for duty because of injury sustained in the performance of his duty without fault of his own."

The case was referred to a master, who, after holding hearings, found a number of subsidiary facts and concluded therefrom that the plaintiff's injury was not sustained in the performance of his duty. The trial judge, however,

---

[1] The other parties were the treasurer and the chief of police of the town.

entered an interlocutory decree by which he (a) sustained several exceptions by the plaintiff to the master's report, (b) ruled that the master's ultimate conclusion was not supported by the subsidiary findings, and (c) found and ruled that the plaintiff's injury was sustained in the performance of his duty within the meaning of G. L. c. 41, § 111F. The judge accordingly entered a final decree granting the relief requested by the plaintiff. The defendants appealed and the appeal was entered in the Appeals Court. That court, holding that the plaintiff's injury was not sustained in the performance of his duty, reversed both the interlocutory and final decrees. It further ordered that a new interlocutory decree be entered confirming the master's report as filed and that a new final decree be entered declaring that the plaintiff is not entitled to leave without loss of pay under G. L. c. 41, § 111F. *Wormstead* v. *Town Manager of Saugus,*          Mass. App. Ct. (1974).[a] The plaintiff applied to us for further appellate review, and we granted the application. G. L. c. 211A, § 11, inserted by St. 1972, c. 740, § 1. See S.J.C. Rule 3:24, § 7, 359 Mass. 834, and fn. thereon, and 838 (1972).

The order of reference to the master did not require him to report the evidence. In such circumstances, "both the trial judge and the appellate justices are required to treat the master's findings of fact as binding unless they are mutually inconsistent, contradictory, plainly wrong or vitiated in view of the controlling law." *Selectmen of Hatfield* v. *Garvey,* 362 Mass. 821, 825 (1973). Where, on the other hand, as in this case, "the master in his report sets forth all of the subsidiary findings upon which he bases an ultimate conclusion, it is the duty of the trial court, and of this court, to draw its own inferences from those findings." *Corrigan* v. *O'Brien,* 353 Mass. 341, 346 (1967). These principles apply equally whether the case is before us for initial appellate review or following a decision of the Appeals Court. *Ballantine* v. *Falmouth,* 363 Mass. 760, 762

---

[a] 308 N. E. 2d 921, 924-925.

fn. 2 (1973). *Ford* v. *Flaherty,* 364 Mass. 382, 387, and fn. 3 (1973). In view of these rules, we here summarize the findings we consider pertinent to the only issue before us: whether the plaintiff's injury occurred in the performance of his duty as that term is used in G. L. c. 41, § 111F.[2]

On November 27, 1971, the plaintiff, a captain in the Saugus police department, was the commanding officer of that department's night division, with a tour of duty from 5 P.M. to 1 A.M. the following morning. He was assigned to the station and had charge of the police department during his tour of duty, subject only to orders of the chief of police. At 8 P.M., the plaintiff took his lunch break, leaving the desk officer in charge of the station, and made the four-minute drive to his home in his own automobile. He was wearing civilian clothes except that he had on his uniform trousers; he carried his service revolver. On arriving home, he had something to eat and then watched television until 8:30 P.M. At that time he collected some police investigation papers which were in his house and left to return to the station. While he was driving back to the station, in the exercise of due care, his automobile was struck in the rear by another vehicle. In this collision the plaintiff was severely injured. He was unable to return to work from the day of the accident until, at least, some time after the master filed his report. The record does not disclose whether he has returned at all.

The circumstances and nature of the plaintiff's lunch break are clearly of primary significance here. An officer's employment contract provides that he "shall work 40 hours" a week, and the town pays an officer for a forty-hour week. Provision for a lunch break is not made in the employment contract.

On July 10, 1967, however, the chief of police by written order established a schedule of lunch periods for the night division which was to be followed in the absence of an emergency. The purpose of the break is to allow the officer

---

[2] The defendants concede that the plaintiff was incapacitated for duty because of injury and that the injury occurred without fault of the plaintiff.

to get something to eat during his tour of duty. Under the
schedule, the lunch period for the captain in charge of the
night division was set from 8 P.M. to 8:45 P.M. During his
lunch period any officer, including the commanding officer,
can go where he pleases, but he must leave word where he
can be reached by telephone or walkie-talkie in case of an
emergency. The desk officer is left in charge in the absence
of the captain. As noted above, time spent during the lunch
period is part of an officer's forty-hour work week; it is
similarly part of his eight-hour shift. Unless he works
beyond these required periods of time, an officer is not paid
overtime wages. Exclusive of the lunch period, an officer
works less than the forty hours weekly for which he is paid.

The plaintiff often performed police functions, such as
making arrests, while on his lunch break. On some occa-
sions he was called back to the station when something
"technical" came up. At times, when he was engaged in
investigations, he took no break. An officer "is considered
to be 'off duty' while at lunch, that is to say, not acting as a
police officer, but if he is notified, for example, of a robbery
and he interrupts his lunch hour to make an arrest, he is
then 'on duty.' "[3]

For reasons hereafter stated, the plaintiff is entitled to
leave without loss of pay. We note first, however, that all
that must be established in this case to create an entitle-
ment under G. L. c. 41, § 111F, the disability being con-
ceded, is the sustaining of an injury in the performance of
duty; the statute does not additionally require proof that
the injury specifically resulted from that duty. On this
point, G. L. c. 41, § 111F, is in contrast to G. L. c. 32, § 7,
relating to accidental disability retirement, which does

---

[3] We construe these particular "subsidiary facts" to be merely a statement of
how the police officers themselves viewed their lunch break. Building on these
facts, the master stated in his "findings and conclusions" that "[d]uring his lunch
period, the . . . [plaintiff] was 'off duty' . . . ." We believe the Appeals Court erred
in considering itself bound by this statement, *Wormstead* v. *Town Manager of
Saugus,*      Mass. App. Ct.      ,      (1974) (308 N. E. 2d 921, 924), since it is
not a subsidiary fact but a conclusion of law in the context of this case. See
*Corrigan* v. *O'Brien,* 353 Mass. 341, 346 (1967).

impose such a restrictive dual requirement.[4] *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 340 Mass. 109, 110-111 (1959). Moreover, as we pointed out in *Pettinella* v. *Worcester,* 355 Mass. 412, 415-416 (1969): "It should be noted that the act which we interpret here [G. L. c. 41, § 111F], as originally proposed, contained language which would have permitted continued compensation to police and firemen incapacitated due to 'injuries incurred or illnesses contracted through no fault of their own in the *actual* performance of duty' . . .. However, the statute as finally enacted changed the requirements for compensation to 'injury sustained in the performance of his duty without fault of his own.' "

Thus we cannot construe G. L. c. 41, § 111F, as the defendants request us to do, to require a direct connection between the injury in question and a specific police activity unique to the nature of law enforcement. We do not accept the defendants' arguments: (1) "it is immaterial that the police officer or employee is being paid for the actual time when the injury was received or that the injury took place during his tour of duty"; (2) "the prerequisite [to recovery] is that at the time of injury he is performing a police duty or a specific duty of his employment"; or (3) "the injury must arise out of a risk or condition peculiar to the employment and not common to all persons." We reject these arguments in favor of a broader construction of the words "in the performance of his duty" comparable to the words "arising out of and in the course of his employment" contained in § 26 of the Workmen's Compensation Act, G. L. c. 152.[5]

---

[4] We hereby reject the dictum in *Pettinella* v. *Worcester,* 355 Mass. 412, 415 (1969), where we indicated that G. L. c. 41, § 111F, also contains such a dual requirement. We note that we allowed recovery in the *Pettinella* case despite this dictum.

[5] While we have previously suggested by analogy to G. L. c. 32, § 7, that G. L. c. 41, § 111F, should be construed more restrictively than G. L. c. 152, § 26, we now realize that analogy is imprecise. See fn. 4, *supra.* Therefore, there is no reason to continue to regard our cases construing the Workmen's Compensation Act as inapposite to cases in which recovery is sought under G. L. c. 41, § 111F. We have recently noted that the original Workmen's Compensation Act, St. 1911,

The construction of the "arising out of" clause is settled law: "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." *Papanastassiou's Case,* 362 Mass. 91, 93 (1972), quoting *Caswell's Case,* 305 Mass. 500, 502 (1940), and *Bator's Case,* 338 Mass. 104, 106 (1958). The meaning of the "in the course of" clause is equally well established. As stated in Locke, Workmen's Compensation, § 261 (1968): "While the words 'arising out of' refer to the physical cause of the injury and the activity of the employee, the words 'in the course of' refer mainly to the time, place, and circumstances of the injury. Did the injury occur within the hours of work? Was the place where the injury occurred closely enough related to the employment so as reasonably to be included within its risks? Were there any attendant circumstances which would enlarge or restrict the ordinary time or place covered by the employment?"

In looking at the plaintiff's employment in all of its aspects, as the foregoing authorities require us to do, we perceive several factors particularly pertinent to our decision. Among these factors are that the plaintiff's injury occurred during a period (1) for which he was being paid, (2) when he was on call, and (3) while he was engaged in activities consistent with and helpful to the accomplishment of police functions.

We recognize that the first of these factors, that the plaintiff was being paid for the time during which he was injured, is not alone dispositive of the issue before us. We have allowed recovery under both G. L. c. 41, § 111F, and G. L. c. 152, § 26, to claimants who were "off duty," in the

c. 751, did not provide coverage for any governmental employees. *Seibolt* v. *County of Middlesex, ante,* 411, 414 (1974). And while a series of amendments has since extended coverage to most governmental employees, the two groups which have never been brought under this umbrella are members of a police or fire force. G. L. c. 152, § 69, as from time to time amended. See *Seibolt* v. *County of Middlesex, supra,* at 414-416. By providing for leave without loss of pay for a police officer or fire fighter who is incapacitated because of injury sustained in the performance of his duty, the Legislature has, in essence, filled a gap in the Workmen's Compensation Act.

sense of not being paid for their labors, at the moment they sustained their injuries. *Yates* v. *Salem,* 342 Mass. 460, 462 (1961). *Canavan's Case,* 364 Mass. 762, 764-765 (1974). Nevertheless, our cases also show that whether the employer compensates the employee for the activity in which he is injured is a relevant consideration, notwithstanding that the activity is one which is of some benefit to the employee. *Souza's Case,* 316 Mass. 332, 337 (1944). *Papanastassiou's Case,* 362 Mass. 91, 93-94 (1972). Indeed, plain common sense would lead one to the conclusion that a police officer or other employee who is injured during his working hours has a better claim to compensation, all other things being equal, than one who is injured outside those hours.

The second factor noted above, that the plaintiff was on call at the time of his injury, is also significant. A venerable line of workmen's compensation cases established the principle that one who is injured while on call, even though not actually working, is entitled to compensation, at least where he is injured on the employer's premises. See, for example, *Doyle's Case,* 256 Mass. 290, 292 (1926); *Sullivan's Case,* 265 Mass. 463, 464-465 (1929). And in *Rupp's Case,* 352 Mass. 658, 659-660 (1967), we affirmed, under the "on call doctrine," an award of compensation to a visiting nurse who did not live at her place of work and who was injured during working hours while off her employer's premises on her way home, where she was to remain on call until her normal quitting time. In the instant case, the plaintiff was on call during his entire lunch period, and had to leave word where he could be reached in an emergency. As proof that the plaintiff's on call status was of more than theoretical significance, the master found in his subsidiary facts that the plaintiff sometimes made arrests during his break, sometimes was called back to the station, and sometimes took no break at all.[6]

---

[6] While a police officer may in theory be on call twenty-four hours a day, we do not suggest here that an officer injured while completely on his own time and engaged in no activity related in any way to his police duties can be said to have sustained his injury while in the performance of his duty. *McHugh* v. *County of Burlington,* 44 N. J. Super. 401 (1957), cited by the defendants, is thus easily distinguishable.

The third factor militating in favor of the plaintiff's position is that he was injured while engaged in activities consistent with and helpful to the accomplishing of police functions. As pointed out in our recital of the facts of this case, the chief of police established the lunch break schedule for the purpose of allowing an officer to get something to eat. In view of the nature of police work, it is undoubtedly of benefit to a town to have an officer relax for a short period in the middle of a shift. In going home the plaintiff was following an accepted practice. In bringing some investigation papers from his home back to the station he was engaged in a task incidental to the performance of his duty. See *Papanastassiou's Case,* 362 Mass. 91, 93-94 (1972). The instant case is therefore to be distinguished from decisions denying compensation to an employee injured while engaged in an activity wholly beyond the scope of his employment for some purpose entirely his own. *Chapman's Case,* 321 Mass. 705, 708-711 (1947). In the last cited case, we added: "The mere fact that the performance of duties which resulted in injury to the employee occurred before or after regular working hours or during a lunch period would not bar him from compensation if his claim was otherwise compensable." 321 Mass. at 710. See *Pettinella* v. *Worcester,* 355 Mass. 412, 413-414, 416 (1969).

Lastly, we feel that nothing we have said to this point in this opinion is undercut by the general rule that "where the employee has fixed hours of work and a fixed place of employment, injuries going to and from work do not arise in the course of employment unless the employee is on the employer's premises." Locke, Workmen's Compensation, § 262 (1968). As *Rupp's Case,* 352 Mass. 658 (1967), makes clear, the "going and coming" rule has little, if any, applicability to trips made to and from the central place of work during periods when an employee is either working or on call. Furthermore, numerous cases establish that an employee who has no single, fixed place of business is, for obvious reasons, generally exempt from the "going and coming" rule. *Keaney's Case,* 232 Mass. 532, 534 (1919).

*Souza's Case,* 316 Mass. 332, 333-337 (1944). *Mandell's Case,* 322 Mass. 328, 330-331 (1948). We take notice that a police officer, although he may have a primary place of duty (as the plaintiff here did), is engaged in a somewhat peripatetic occupation. This fact is amply borne out in the record here, the master having found that the plaintiff sometimes made arrests while on his lunch break. Since a police officer can serve in some capacity anywhere in a community, we believe he should be included in that class of "traveling workers" not barred from receiving compensation to which he is otherwise entitled by the "going and coming" rule.

In light of our conclusions, the case is remanded to the Superior Court where the interlocutory decree concerning the master's report is to be modified to overrule the plaintiff's exceptions nos. 1 and 2 for reasons expressed by the Appeals Court. *Wormstead* v. *Town Manager of Saugus,*     Mass. App. Ct.    ,     (1974)[b]. As thus modified, the interlocutory decree is affirmed. As originally entered, the final decree of the Superior Court is affirmed.

*So ordered.*