## HARRY GARDNER *vs.* CITY OF PEABODY & others.[1]

Essex.    September 16, 1986. — November 14, 1986.

Present: GREANEY, C.J., CUTTER, & PERRETTA, JJ.

*Police,* Incapacity. *Municipal Corporations,* Police, Officers and em-
ployees. *Practice, Civil,* Master: findings, recommittal, report.

The record in an action brought by a police officer seeking disability pay-
ments under G. L. c. 41, § 111F, for a work-related injury, revealed
no error in the judge's adopting a master's supplemental report which
included the master's explanation and clarification of his original report.
[172-173]

A police officer, injured in an accident occurring outside the city in which he
was employed before he had reported to the police station for the day,
was entitled under the principles of *Wormstead* v. *Town Manager of
Saugus,* 366 Mass. 659, 664-666 (1975), to disability payments under
G. L. c. 41, § 111F, where he was injured "during a period (1) for
which he was being paid, (2) when he was on call, and (3) while he
was engaged in activities consistent with and helpful to the accomplish-
ment of police functions." [174-175]

In an action by a city police officer seeking disability payments under G. L.
c. 41, § 111F, for a work-related injury, the judgment was to be modified
to discharge individual municipal officers from liability and to provide
for future payments to cease either on the officer's retirement or his
return to duty upon recovery. [175]

CIVIL ACTION commenced in the Superior Court Department
on October 31, 1979.

The case was heard by *John L. Murphy, Jr., J.,* on a master's
report. Following remand by the Appeals Court, 18 Mass.
App. Ct. 1107 (1984), and recommittal to the master, further
proceedings were had before *William Highgas, Jr., J.*

*Daniel B. Kulak,* Assistant City Solicitor, for the defendants.
*Paul A. Manoff* for the plaintiff.

CUTTER, J. This appeal presents two principal questions.
The first is whether this case is within the holding in *Wormstead*

---

[1] The chief of police, auditor, and treasurer of the city.

v. *Town Manager of Saugus,* 366 Mass. 659 (1975). The second is whether the result is affected to any extent by the 1982 amendment of Mass.R.Civ.P. 53, as appearing in 386 Mass. 1237 (1982).

Gardner, a police officer of Peabody (the city), brought this action in the Superior Court on October 31, 1979, seeking various forms of relief under G. L. c. 41, § 111F, for disability arising, at least in part, from an automobile accident, which took place in Revere on October 2, 1975. The case was referred by Superior Court judge no. 1 in October, 1980, to a master[2] whose findings of fact were to be final.

The master, in an initial report, made subsidiary findings of fact which included findings (a) that in August, 1975, while on an extra duty assignment Gardner was hit in the head and sustained a concussion, (b) that later in that year, while on another assignment at a lounge, he was hit on his head with a bottle by a patron; and (c) that on October 2, 1975, he was in an automobile accident in Revere while headed north to Peabody, and sustained another head injury and concussion.[3] Minor incidents occurred in 1979, one while Gardner was on vacation, and one while driving a police cruiser, the details of which Gardner could not remember. The master reported that a psychiatrist, who testified at length before the master, diagnosed Gardner's problems as temporal lobe epilepsy and right sided brain damage, consistent with Gardner's history of blackouts, lightheadedness, and dizziness. The psychiatrist testified that temporal lobe epilepsy is permanent and at present not curable.[4] Gardner earned a doctoral degree during the time he was suffering from blackout and dizziness.

---

[2] The original 1980 reference to the master is not included in the record appendix. The order confirming the master's original report states that the master "was not to file a transcript of the evidence or of the proceedings."

[3] There apparently was conflicting evidence concerning whether Gardner was scheduled to work on October 2, 1975. Gardner claimed that he was not so scheduled but had been called in Brockton (where he was staying) about 1:20 A.M. The city claims that Gardner was scheduled to work on October 2.

[4] The psychiatrist noted, so the master reports, that the accident of October 2, 1975, was the latest of the three 1975 major head injuries before the onset

The master found that Gardner (1) had suffered the three 1975 head injuries first described and was prevented "from regularly performing safely the ordinary and usual duties of a police officer," (2) that his "epilepsy is causally related to the three head injuries sustained in 1975 and that it is more probable than not that the October 2, 1975, accident ultimately caused the onset of . . . [Gardner's] temporal lobe epilepsy," (3) that "all three . . . [1975] incidents involving head injuries occurred during . . . [Gardner's] employment as a police officer," but that "even if the accident of October 2, 1975, did not occur during the course of" Gardner's police employment that "there is sufficient· causal connection between the prior 1975 head injuries and . . . [the] temporal lobe epilepsy to find" (as the master did) that the "permanent disability occurred during" Gardner's police employment. The master then found Gardner to be entitled to compensation under § 111F from July 15, 1979, until his retirement (or a determination that the disability no longer exists) and computed back pay through December 5, 1982, to be in excess of $77,000.

The master's report was confirmed by Superior Court judge no. 2 on April 13, 1983. The city appealed. A panel of this court ordered the judgment vacated and on June 4, 1984 (18 Mass. App. Ct. 1107), remanded the case "to the Superior Court for a hearing and findings as to . . . [Gardner's] status when he was called . . . [on] October 2, 1975." The remand order referred to *Wormstead* v. *Town Manager of Saugus,* 366 Mass. at 664-667. Superior Court judge no. 3 on July 11, 1984, referred the case to the same master for a further report. A supplemental report was filed on May 9, 1985.

Further subsidiary findings included the following: On Wednesday, October 1, 1975, Gardner had the day off. His "normal shift was 1 A.M. to 9 A.M." The desk officer between 1 and 2 A.M. on October 2 called Gardner in Brockton. Gardner who was then asleep, called back and talked with Sergeant Cottrell,

---

of Gardner's symptoms. The doctor was reported as having "observed that a series of head injuries over a relatively short period of time prior to the onset of temporal lobe epilepsy caused him (the doctor) to conclude that all the traumas are related to the resulting" temporal lobe epilepsy.

who told Gardner that he was scheduled to work and that he should report at once. Gardner denied that he was scheduled to work, but left for work because of Sergeant Cottrell's instructions. The Peabody police practice was that the work assignments "for the month would be posted." The original schedule so posted was not presented in evidence before the master. The "uncontradicted testimony . . . was that officers frequently changed schedules by swapping with other officers." Procedures governing such exchanges "were rather loose and . . . last minute changes in scheduling . . . were not uncommon . . . . [I]t was a common practice to telephone an officer . . . otherwise off duty to report for work to provide a full complement . . . for a particular shift."[5]

The master referred to his earlier report and attempted to clarify it by pointing out that he had "specifically indicated that . . . [Gardner's] epilepsy was causally related to all three [1975] head injuries" in accordance with the psychiatrist's "uncontroverted" testimony. The master unequivocally concluded (A) that Gardner "was injured in the line of duty on October 2, 1975, while traveling from Brockton to Peabody." (B) Even if Gardner was not so injured in the line of duty, the prior two 1975 accidents (which the city did not dispute were in line of duty) were "also causally connected to . . . [Gardner's] onset of temporal lobe epilepsy." (C) Gardner, accordingly, is entitled to damages (through September 30, 1984) in excess of $124,000.

---

[5] Further subsidiary findings on the accident of October 2, were: (1) Under the city's practice a police officer late for a shift would be paid for the whole shift without docking his pay. (2) Gardner was not marked "AWOL" until it was learned that he had been injured. (3) As a police officer, Gardner was always on call and at the time of the accident, he was responding to such a call on direct order of Sergeant Cottrell. (4) Gardner "had an honest and reasonable belief that he was not scheduled to work on October 2." Such scheduling, if it existed "was not communicated to" Gardner prior to his telephone talk with Sergeant Cottrell. (5) Even if Gardner had been shown by the original unproduced schedule to have been assigned to work on October 2, his reasonable and honest belief that he was not so scheduled, "compels a finding that . . . [he] came to work at the . . . [city's] request and for . . . [its] benefit."

After consideration of objections to the supplemental report, it was adopted by Superior Court judge no. 4 on July 22, 1985. A motion by the city to strike certain findings of the supplemental report also was denied that day. The city appealed.

1. The original reference to the master (see note 2, *supra*) was prior to the revision (a) of Mass.R.Civ.P. 53(e)(2), 365 Mass. 820 (1974), by (b) Mass.R.Civ.P. 53(h)(3), 386 Mass. 1242 (1982), effective with respect to orders of reference on and after July 1, 1982. We think that the new reference pursuant to the 1984 order of this court, essentially a continuation of the earlier reference to the same master, may have been governed by rule 53 as in force prior to 1982. In any event, we perceive no changes by the 1982 version of rule 53 which would require a different result on the facts of the present case. See *Pollock* v. *Marshall,* 391 Mass. 543, 554 n.9 (1984).

No part of the evidence before the master is before us. The master's subsidiary findings have not been shown to be clearly erroneous, mutually inconsistent, unwarranted by the evidence, or otherwise tainted by error of law. We draw no inferences from the master's subsidiary findings which lead us to think that Superior Court judge no. 4 erred in adopting the master's supplemental report.[6]

2. We discuss the city's specific objections to the master's supplemental report:

*a.* The city objects to the master's statement that Gardner's testimony was "uncontroverted" that "the original schedule showed him to be off [duty] on" October 2. We do not have

---

[6] We note that under revised rule 53(h)(3), 386 Mass. 1242 (1982), we are not required to "review a question of law dependent upon evidence before the master unless the evidence was recorded by a stenographer and a transcript" of relevant parts of the proceedings is made available as provided more fully in the rule. The city, under either version of rule 53, has "failed to raise properly the issue whether the master's findings were supported by the evidence." See *Thomas O'Connor & Co.* v. *Medford,* 16 Mass. App. Ct. 10, 14-15 (1983), which also holds (at 15) that where the evidence before a master "is not to be reported, the filing of exhibits (other than those incorporated by reference in the master's report) or transcripts does not require . . . [reviewing] judge[s] to examine such material." See also *Russell* v. *Russell,* 18 Mass. App. Ct. 957, 958 (1984, involving a pre-trial 1982 reference to a master).

before us the testimony before the master, so we cannot determine whether Gardner's testimony was contradicted. The exhibits before the master relied upon to show other testimony need not be examined by us. See note 6, *supra*, and the *Thomas O'Connor & Co.* case, 16 Mass. App. Ct. 10, 14-15 (1983), there cited. See also *Russell* v. *Russell*, 18 Mass. App. Ct. 957, 958 (1984).

*b.* The city contends that the findings concerning whether Gardner would have been paid for the entire shift even if he had arrived late for it are irrelevant. We cannot say, where no evidence before the master is in the record appendix, that these subsidiary findings have no relevance.

*c.* The city contends that the master "exceeded his scope of reference" as ordered by this court, viz., "a hearing and findings as to . . . [Gardner's] status when he was called in the early morning of October 2, 1975"; and by the new order of reference of July 11, 1984, by Superior Court judge no. 3 ("to make detailed subsidiary findings on . . . [Gardner's] status and to file his supplementary report"). The master was not forbidden to clarify or to supplement his earlier findings if, as may have occurred here, he observed that his earlier findings may have been confusing and possibly had been misunderstood by this court. We think that Superior Court judge no. 4 acted within his discretion in adopting the supplemental report without change, including the master's explanation and clarification of his earlier report with respect to the causal relationship of all three 1975 head injuries to Gardner's temporal lobe epilepsy. See *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 253-256 (1967), where a trial judge was held not required by an earlier opinion of the Supreme Judicial Court, 347 Mass. 478 (1964), "to limit the range of his further inquiry." See also the *Thomas O'Connor & Co.* case, 16 Mass. App. Ct. at 17, cited note 6, *supra*. In the circumstances, we are of opinion that the two reports may be read together.

*d.* The city objects to the master's conclusion (III. A) that Gardner "was injured in the line of duty on October 2, 1975." As a conclusion of fact, it is supported by the subsidiary findings already mentioned. See note 5, *supra*, and related text of

this opinion. As in part a conclusion of law (see *Wormstead* v. *Town Manager of Saugus*, 366 Mass. at 660-661; *Pollock* v. *Marshall*, 391 Mass. at 555), we treat the conclusion as "subject to independent judicial review."

3. This case may involve some expansion of the principles of the *Wormstead* case, just cited, in that the accident on October 2, 1975, took place outside Peabody, whereas in the *Wormstead* case, the accident occurred within Saugus, the town in which the then plaintiff was a police officer; and[7] this accident took place before Gardner had reported at the police station for the day, whereas in the *Wormstead* case, the plaintiff was injured during an off-duty lunch break during which he was on call.

All three factors mentioned specially in the *Wormstead* decision, at 664-666, however, were satisfied in the present case. Gardner was injured "during a period (1) for which he was being paid, (2) when he was on call, and (3) while he was engaged in activities consistent with and helpful to the accomplishment of police functions." In the *Wormstead* case also the Supreme Judicial Court ruled (at 666-667) that recovery was not barred by the so-called "going and coming" rule, see Locke, Workmen's Compensation §§ 262-265 (2d ed. 1981 & Supp. 1984), in part because policemen are "engaged in a somewhat peripatetic occupation." See the *Wormstead* case, at 667. This court reversed a trial judge for taking "too rigid a view of the factors listed in the *Wormstead* case" in *Allen* v. *Selectmen of Weymouth*, 15 Mass. App. Ct. 1009, 1010 (1983), where a police officer on a day off was injured while returning to his home after testifying at the request of his supervisors. See also *McElroy's Case*, 397 Mass. 743, 746-750 (1986); *Frassa* v. *Caulfield*, 22 Mass. App. Ct. 105, 109-113

---

[7] Some of the original and the supplemental findings of the master appropriately should have been more incisive and should have partaken less of a recitation of uncontradicted evidence. It is apparent, however, in view of the master's conclusions, that these statements were intended as subsidiary findings. Upon a remand of this type, it often will prove more satisfactory and expeditious to have further evidence heard by a judge rather than pursuant to a second reference to a master.

(1986). Compare *Maguire's Case*, 16 Mass. App. Ct. 337, 339-341 (1983). We conclude that Superior Court judge no. 4 reasonably drew the same inferences of fact which we draw from the master's subsidiary findings and correctly applied the *Wormstead* case as matter of law.

We are of opinion, also, that (without regard to Gardner's status on October 2, 1975) the master's findings (on evidence not before us) establish that all three 1975 head injuries were causally related to Gardner's temporal lobe epilepsy. These findings thus provide support for an award to Gardner under c. 41, § 111F.

4. In two respects the judgment of the Superior Court must be modified. The judgment runs against individual municipal officers of Peabody. They should not be held liable. See G. L. c. 258, §§ 1, 9, 13, as revised in 1978 and as hereafter amended. That judgment also requires payments for an indefinite future period, not contemplated under c. 41, § 111F. See *Hennessey* v. *Bridgewater*, 388 Mass. 219, 226 (1983). The judgment must be modified to discharge the individual defendants and to provide that future payments shall cease upon Gardner's retirement or return to duty upon recovery. As thus modified the judgment is affirmed.

*So ordered.*