MATTHEW CORBETT & another[1] *vs.* RELATED COMPANIES
NORTHEAST, INC.

Suffolk. January 8, 1997. - April 14, 1997.

Present: WILKINS, C.J., O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Practice, Civil,* Appeal, Intervention, Parties, Standing. *Workers' Compensation Act,* Settlement agreement. *Contract,* Settlement agreement. *Statute,* Construction. *Fire Fighter,* Incapacity.

A municipality had no standing to object to a settlement between a retired, injured fire fighter and the owner of certain property on which the fire fighter sustained his work-related injuries, or to appeal from the ensuing judgment, where the municipality was not a party to the fire fighter's negligence action against the property owner. [717-719]

Discussion of the statutory provision set forth in the workers' compensation act, G. L. c. 152, § 15, for a judicial hearing on, and opportunity for an insurer to challenge, the allocation of any proposed settlement of a third-party action, contrasted with the lack of such provision in G. L. c. 41, §§ 100 and 100F, which authorize compensation for police officers and fire fighters injured in the line of duty. [719-722]

CIVIL ACTION commenced in the Boston Municipal Court Department on December 17, 1993.

After removal to the Superior Court Department, a motion for authorization of settlement was heard by *Margaret R. Hinkle,* J., and a stipulation of dismissal was entered; a motion to order assembly of the record for appeal was allowed by *John C. Cratsley,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph H. Callahan, Jr.,* Assistant Corporation Counsel, for the City of Boston.

*Thomas B. Drohan* for the plaintiffs.

MARSHALL, J. In a third-party tort action brought by an injured fire fighter and his wife, a Superior Court judge approved a settlement of the action after conducting a hearing

---

[1]Mary Corbett.

to determine whether the settlement terms were negotiated in good faith. We are asked to decide whether the city of Boston (city)[2] may object to the settlement because it effectively discharges a substantial part of the city's lien for reimbursement of medical expenses and disability wage compensation benefits paid on the fire fighter's behalf. The answer is no. The city does not have standing to bring this appeal, and the appeal must be dismissed.

1. We summarize the relevant facts. Matthew Corbett joined the Boston fire department in 1970, rising to the rank of captain by 1990. On December 20, 1990, he sustained work-related injuries when he fell through a pier owned by Related Companies Northeast, Inc. (Related), which he was inspecting in the aftermath of a fire. He was hospitalized from December 20 to 24, 1990. As a result of his injuries Corbett did not return to work, and the city granted him a disability retirement on June 30, 1992. Between December 20, 1990, and his retirement on June 30, 1992, the city paid on his behalf $17,410.76 in medical expenses, pursuant to G. L. c. 41, § 100, and tax-free wage continuation benefits of $125,267.45, pursuant to G. L. c. 41, § 111F, for a total of $142,678.21.

In December, 1993, Corbett brought a negligence action, and his wife Mary Corbett brought a loss of consortium claim, against Related in the Boston Municipal Court. The case was removed to the Superior Court. Shortly before trial the Corbetts and Related filed a joint motion for authorization of settlement, which was heard on May 16, 1995. They requested that the judge determine whether their proposed agreement was "a good faith settlement, taking into consideration the issues with respect to liability, causation and the respective rights of the City of Boston and the State [*sic*] Retirement Board." The proposed settlement provided that Related would pay Corbett $27,500 for his injuries, and pay Mary Corbett $85,000 for her loss of consortium, for a total settlement amount of $112,500.

The city and the retirement board of Boston (board) were present at the hearing on the motion.[3] They objected to the judge's approving the allocation of the proposed settlement

---

[2]The city was not a party in the action.

[3]While the record is not clear, we assume that notice of the hearing was given to the city and to the board by either Related, or the Corbetts, or

because, they argued, it would interfere with their statutory lien rights and limit their recovery to $27,500, the amount to be paid to Corbett. They said they were entitled under G. L. c. 41, §§ 100 and 111F, to the entire settlement amount of $112,500 as partial reimbursement for their expenditures on behalf of Corbett.[4] Counsel for Related explained to the judge that Related had strong defenses to the claims of Corbett, both as to causation and as to contributory negligence.[5] The Corbetts' counsel explained that any recovery by Mary Corbett on her loss of consortium claim would not be affected by any finding of contributory negligence on the part of Corbett.[6]

The judge concluded that the only issue before her was whether the settlement allocation between the Corbetts was fair in the circumstances, and that she had no authority to consider the effect of the allocation on the city's lien. She approved the settlement and ruled that the apportionment was fair and reasonable. Related and the Corbetts filed a stipulation of dismissal of the third-party action. The city then filed

both. Neither the city nor the board sought to intervene as a party in the action. Counsel for the Corbetts informed the court that the parties (the Corbetts and Related) wished to provide the city and the board with "an opportunity to be heard." Without objection, counsel for the city and counsel for the board cross-examined witnesses who testified at the hearing. They also argued their respective positions to the judge. The city also submitted a written opposition to the motion, although that submission is not reflected on the docket.

[4]There was no objection to the amount of the settlement; the city and the board challenged only the allocation of the amount. Counsel for the city submitted an affidavit in which he claimed to "enforce the rights of the City under Mass. Gen. Laws c. 41, §§ 100 and 111F." His affidavit also contained details of the expenses for which the city claimed reimbursement. These included the amounts already paid on Corbett's account and future pension payments totalling $550,000.

[5]These included the fact that the pier had been secured by a fence and signs; the fire had been set by vandals; Corbett's duties did not require him to gain access to the pier; Corbett had failed to test the structural integrity of the pier after the fire; Corbett was released from the hospital with little or no pain and Corbett suffered from ailments prior to the accident. Corbett testified that prior to the December 20, 1992, accident, he had suffered from a number of injuries and disabilities, including back injuries for which he had undergone at least two surgeries. The day before the accident, he had consulted a doctor for severe back problems, and he currently suffers from pulmonary problems, diabetes, alcoholism, and drug dependencies.

[6]Mary Corbett described her husband's deteriorating condition after the accident, both mental and physical, and the toll that it was taking on her.

a notice of appeal from the allowance of the motion for authorization of the settlement. When a representative of the clerk-magistrate informed the city that it could not assemble the record because the city was not a party in the action, the city filed a motion to order the clerk-magistrate to assemble the record for appeal. Another judge in the Superior Court allowed the motion, and directed the clerk-magistrate to process the appeal. We transferred the appeal here on our own motion.

2. The city argues on appeal, as it did below, that it was error for the judge to approve the settlement because the allocation effectively discharged $85,000 of its statutory liens against Corbett. Because, it says, the relevant portions of the Massachusetts workers' compensation act, G. L. c. 152, and the statutes providing benefits for injured police officers and fire fighters, G. L. c. 41, §§ 100 and 111F, are "virtually identical" and "serve the same purpose," we are urged to apply to this case the decisional law interpreting G. L. c. 152. Were we to do so, the city claims, we would require that the city be reimbursed the full amount of the settlement, precluding any allocation to Mary Corbett for her loss of consortium claim.

The Corbetts reply that the city lacks standing to appeal from the trial judge's decision because it is not a party to the action. The city never responded directly to this argument. But it did so inferentially. The gist of its argument is that we should consider its position as analogous to that of a workers' compensation insurer seeking to protect its rights under G. L. c. 152, § 15. That section of the workers' compensation statute gives an insurer standing to challenge the allocation of a settlement award paid by a third-party to an injured worker and his or her spouse even when the insurer is not a party to the action.[7]

We recognize that there are sound reasons why the city seeks to secure for itself the same rights as those afforded to a

[7]General Laws c. 152, § 15, provides that there shall be a judicial hearing at which both the employee and the insurer shall have "an opportunity to be heard," at which "the court shall inquire and make a finding as to the taking of evidence on the merits of the settlement, on the fair allocation of amounts payable to the employee and the employee's spouse . . . and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement."

workers' compensation insurer under G. L. c. 152, § 15.[8] We conclude, however, that it may not maintain this appeal or challenge the allocation of the settlement award between Corbett and his wife.

As a general rule, only parties to a lawsuit, or those who properly become parties, may appeal from an adverse judgment. See *Marino* v. *Ortiz*, 484 U.S. 301, 304 (1988); *United States ex rel. Louisiana* v. *Jack*, 244 U.S. 397, 402 (1917); Mass. R. A. P. 3 (c), as amended, 378 Mass. 927 (1979) ("The notice of appeal shall specify the party or parties taking the appeal"). In certain circumstances courts have allowed a nonparty to intervene after the entry of judgment in the trial court for the purpose of appealing from the judgment. See *United Airlines, Inc.* v. *McDonald*, 432 U.S. 385, 395-396 (1977), and cases cited therein. Here, while the city participated in the hearing on the motion to approve the settlement, it never sought to intervene as a party in the proceeding, nor did it seek timely postjudgment intervention. The city may not claim the appellate rights afforded to those who have sought such intervention. See *id.* at 395-396 ("The critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment").

There are limited circumstances in which a nonparty has been permitted to appeal from a judgment, despite its failure to intervene, for example, where a nonparty has a direct, immediate and substantial interest that has been prejudiced by the judgment, and has participated in the underlying proceedings to such an extent that the nonparty has intervened "in fact." *Binker* v. *State*, 977 F.2d 738, 745 (3d Cir. 1992) (nonparties are permitted to appeal where the equities favor hearing the appeal, where the nonparties participated in the settlement agreement, and where the nonparties had a stake in its proceeds discernible from the record); *Kenney* v. *Quigg*, 820 F.2d 665 (4th Cir. 1987). But those circumstances are rare,

---

[8]Were they available, such rights would also protect the injured fire fighter. In this case the Corbetts sought to secure for themselves the same protections as those afforded under G. L. c. 152, § 15, to injured workers who may be accused of an unfair allocation of amounts payable to the employee and the employee's spouse, the very claims that the city makes here against Corbett. It was for that reason that they filed their motion for authorization of the settlement and invited the city to be heard on the motion.

and merely commenting on, or objecting to, a proposed settlement, as the city did here, generally is insufficient to justify an appeal by a nonparty. See *Marino* v. *Ortiz, supra* at 304. See also *United States* v. *LTV Corp.*, 746 F.2d 51, 53 (D.C. Cir. 1984) (nonparty "did not automatically acquire party status simply by being permitted to comment on the proposed final judgment or by filing its notice of appeal").

We have never adopted this exception to the general rule limiting appeals to the parties of the underlying case. We decline to do so here. We recognize that the city has a direct and substantial interest in the fairness of the allocation of the settlement amounts between Corbett and his wife.[9] But that alone does not give standing to the city to appeal the judgment. Moreover, where, as here, the Legislature has not provided the city with the same protections it has to workers' compensation insurers in similar situations, we are particularly hesitant to permit the city to appeal from the judgment. See *In re Penn Cent. Transp. Co.*, 596 F.2d 1155, 1159-1162 (3d Cir.), cert. denied sub nom. *Schofer* v. *Penn Cent. Corp.*, 444 U.S. 835 (1979) (shareholders who did not have a right under statute to be heard on plan of reorganization lacked standing to appeal); *Hirsch* v. *Building & Constr. Trade Council*, 530 F.2d 298, 307-308 (3d Cir. 1976) (where statute did not permit charging party to join in suit to secure injunction, it would be impermissible disregard of statutory scheme to permit charging party to intervene in appeal).

To understand the city's predicament it is helpful to review the two statutory schemes relevant to this case. In 1911, the Legislature enacted the workers' compensation act to provide

---

[9]Contrary to the city's position, we are doubtful that the city could be reimbursed for the entire amount of the settlement, including the $85,000 paid to settle the loss of consortium claim brought by Mary Corbett. In *Eisner* v. *Hertz Corp.*, 381 Mass. 127 (1980), we held that G. L. c. 152, § 15, "does not require reimbursement for an injury not compensable under c. 152," and that "[n]owhere does c. 152 suggest that loss of consortium is a compensable injury." We concluded that the insurer was not entitled to benefit from the wife's recovery. See also *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507 (1980) (portion of third-party recovery attributable to spouse's action for loss of consortium is excluded from recovery subject to insurer's reimbursement). In this respect G. L. c. 41, §§ 100 and 111F, are analogous to G. L. c. 152, § 15, and in all likelihood the city could not be reimbursed from the amount allocated to Mary Corbett. It nevertheless has an interest in the fairness of the allocation.

employees with "compensation for loss of wages or earning capacity caused by a work-related injury, regardless of the fault of their employers or the foreseeability of harm." *Eyssi* v. *Lawrence*, 416 Mass. 194, 197 (1993), quoting *Murphy* v. *Commissioner of the Dep't of Indus. Accidents*, 415 Mass. 218, 222 (1993). The act did not cover governmental employees. A series of subsequent amendments extended its coverage to most governmental employees, but did not include police officers and fire fighters under its umbrella. *Eyssi, supra* at 197-198. *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 663-664 n.5 (1975). See G. L. c. 152, § 69. In 1952 the Legislature "filled the gap" in the workers' compensation act by enacting G. L. c. 41, § 111F, which provides for leave without loss of pay for police officers and fire fighters injured in the performance of their duty,[10] and G. L. c. 41, § 100, which provides for payment of the medical and related expenses of police officers or fire fighters injured in the performance of their duty.[11] *Eyssi, supra* at 198. *Wormstead* v. *Town Manager of Saugus, supra* at 663-664 n.5. G. L. c. 41, §§ 100 and 111F.

While the provisions of G. L. c. 41, §§ 100 and 111F, are similar, indeed almost identical, in many respects to G. L.

[10]General Laws, c. 41, § 111F, provides in relevant part:

"Whenever a police officer or fire fighter of a city, town or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period after such police officer or fire fighter has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers or fire fighters . . . determines that such incapacity no longer exists."

[11]General Laws, c. 41, § 100, provides in relevant part:

"Upon application by a fire fighter or police officer of a city, town or fire or water district, or in the event of the physical or mental incapacity or death of such fire fighter or police officer, by someone in his behalf, the board or officer of such city, town or district authorized to appoint fire fighters or police officers . . . shall determine whether it is appropriate under all the circumstances for such city, town or district to indemnify such fire fighter or police officer for his reasonable hospital, medical, surgical, chiropractic, nursing, pharmaceutical, prosthetic and related expenses and reasonable charges for chiropody (podiatry) incurred as the natural and proximate result of an accident occurring or of undergoing a hazard peculiar to his employment, while acting in the performance and within the scope of his duty without fault of his own."

c. 152, § 15, only the workers' compensation statute provides for a judicial hearing on the fair allocation of any proposed settlement of a third-party action, and gives an insurer (even if it is not a party to the action) an opportunity to be heard and to challenge the proposed allocation. G. L. c. 152, § 15. We have said that in deciding issues arising under G. L. c. 41, §§ 100 and 111F, it is appropriate to refer to cases interpreting analogous provisions of the workers' compensation act, G. L. c. 152. *Wormstead, supra* at 663-664 & n.5. See *DiGloria* v. *Chief of Police of Methuen,* 8 Mass. App. Ct. 506, 512 (1979). And we have recognized that G. L. c. 152, § 15, "expressly grants the workers' compensation insurer, whose financial interests may be involved, an opportunity to be heard concerning authorization of a third-party settlement." *DiMartino* v. *Quality Indus. Propane, Inc.,* 407 Mass. 171, 174 (1990). But where the two statutes are dissimilar in some important respect, "[w]e cannot interpret a statute so as to avoid injustice or hardship if its language is clear and unambiguous and requires a different construction." *Pielech* v. *Massasoit Greyhound, Inc.,* 423 Mass. 534, 539 (1996), cert. denied, 117 S. Ct. 1280 (1997), quoting *Milton* v. *Metropolitan Dist. Comm'n,* 342 Mass. 222, 227 (1961).

In stark contrast to G. L. c. 152, § 15, G. L. c. 41, §§ 100 and 111F, make no provision for any judicial hearing, and there is no statutory authorization for the city to challenge the allocation of settlement amounts payable to the fire fighter and to the fire fighter's spouse.[12] We cannot discern from the record on what conceivable basis the city participated in the hearing on the motion to approve the settlement filed by the Corbetts and Related.[13] We are not inclined to interpret our

---

[12]The Legislature could conclude that it would be rational to provide the city with the same procedural protections as those granted to private insurers under G. L. c. 152, § 15. Giving the employers of fire fighters and police officers an opportunity to be heard when their financial interests are involved is efficient and avoids the necessity of multiple lawsuits.

[13]We have grave doubts as to the authority of the court below to entertain the motion to approve the settlement between the Corbetts and Related in view of the absence of any statutory authorization comparable to G. L. c. 152, § 15. The Corbetts recognize that they were "not even under an obligation to initiate . . . a hearing" on the appropriateness of their settlement with Related. Having "elected" to go before the court for the purpose

rules of appellate procedure in a manner that would be in conflict with the express wishes of the Legislature.

*Appeal dismissed.*

of determining whether their settlement was in good faith, they say, the court's order must be affirmed. Notwithstanding its participation in the hearing on the motion, the city now argues that the judge lacked subject matter jurisdiction over the settlement allocation between the Corbetts and Related. Because the city cannot maintain this appeal, we do not address that question. See *Wilson* v. *Southwest Airlines, Inc.*, 880 F.2d 807, 817 & n.1 (5th Cir. 1989) (where motion to intervene denied, charity had no standing to question court's jurisdiction to approve settlement).